163 P.3d 1024

**In re the Marriage of Stacey BREITBART–NAPP, Petitioner/Appellee,**

v.

**David NAPP, Respondent/Appellant.**

**Nos. 1 CA–CV 05–0557, 1 CA–CV 05–0844.**

Court of Appeals of Arizona, Division 1, Department C.

May 24, 2007.

The Cavanagh Law Firm, P.A. by Philip C. Gerard, Helen R. Davis, Christopher Robbins, Phoenix, Attorneys for Petitioner/Appellee.

Mariscal, Weeks, McIntyre & Friedlander, P.A. by Steven D. Wolfson, Phoenix, and Jenner & Block LLP by David J. Bradford, Steven McMahon Zeller, Chicago, Attorneys for Respondent/Appellant.

## OPINION

BARKER, Judge.

¶ 1 David Napp ("Husband") appeals from the trial court's orders granting the Motion for Relief of Stacey Breitbart-Napp ("Wife") filed pursuant to Arizona Rule of Civil Procedure ("Rule") 60(c) and awarding Wife attorneys' fees and costs related to the Rule 60(c) motion. For the following reasons, we affirm as to the Rule 60(c) order, vacate the award of fees and costs, and remand.

### Facts and Procedural History

¶ 2 Husband and Wife were married on June 5, 1988. They have two minor children. On January 6, 2001, Husband and Wife executed a post-marital agreement ("Post–Marital Agreement") in anticipation of either party filing a petition for dissolution. Husband had ownership interests in National Home Communities, EMB/NHC, LLC, and various affiliated entities (collectively referred to as "EMB") that he agreed would be contributed to DSN, LLC ("DSN"). In subsequent legal proceedings, the Delaware Court of Chancery described the business structure of EMB as follows:

> The partnerships were formed at various times from 1996 to 1999 to acquire, own and operate real property developed and used as recreational vehicle ("RV") or mobile home communities. A different, specially formed affiliate of Lehman Brothers, Inc. serves as both 1% general partner and a 74% limited partner of each partnership (collectively, the "PAMI Partners"). In each case, the other 25% limited partner is EMB/NHC, L.L.C. [EMB], a Delaware limited liability company owned and controlled by David Napp and Colleen Edwards. [EMB] manages the properties and is entitled to distributions on its 25% limited partnership interest only after Lehman receives a sizeable preferential return and the return of all its capital.

*PAMI–LEMB I Inc. v. EMB–NHC, L.L.C. v. Lehman Bros. Holdings,* 857 A.2d 998, 1001 (Del.Ch.2004) (mem.opinion) [hereinafter "Memorandum Opinion"].

¶ 3 According to the Post–Marital Agreement, Wife and Husband would each have a forty-percent ownership interest in DSN. Their minor children would each have a ten-percent interest. Neither party was to transfer his or her interest in DSN prior to January 2, 2002. Thereafter, Wife had the right to (1) retain her interest; (2) sell her interest in DSN to a third party, subject to Husband's right of first refusal; or (3) "put" her ownership interest in DSN to Husband, who was required to purchase the interest at fair value. In the event Husband and Wife could not agree on a fair value, an agreed upon appraiser would determine the value.

¶ 4 On September 28, 2001, Wife filed a petition for dissolution of the marriage in Maricopa County. In November 2003, the parties negotiated a Property Settlement Agreement ("PSA") with the assistance of Judge Edward O. Burke as a special settlement judge. The court entered a decree of dissolution on December 30, 2003. Husband signed the PSA on April 23, 2004. The decree stated the following concerning the PSA:

> The written Property Settlement Agreement which will be signed by the parties, dated as of November 21, 2003, is incorporated herein as Exhibit "B." Said Agreement is approved and the property and debts of the parties are divided and distributed as set forth in said Agreement. All other rights and obligations of the parties are settled in accordance with each and every term and provision thereof, as the judgment of this Court. Said Agreement is incorporated but specifically not merged into this Decree, and the same shall be enforceable as a contract between the parties.

¶ 5 The PSA contained an "Incorporation and Non–Merger" clause as follows:

> This Agreement may be presented by either party in the action presently pending for dissolution of the marriage between the parties for the approval thereof by the Court, and if approved, shall be incorporated in and become a part of any order or decree or judgment rendered in any such dissolution action, and may be enforceable by contempt proceedings or any other appropriate remedy which the law shall allow, but the terms hereof need not be set forth in the decree, and this Agreement shall not be merged in any order, decree or judgment and the provisions of this Agreement shall remain separately enforceable as a contract between the parties, regardless of any incorporation by identification in any order, decree or judgment of the Court.

Wife refused to sign the PSA on April 23, based on an alleged disclosure violation by Husband, which she learned of after negotiating the PSA. The court denied her motion to stay her obligation to sign. Wife had expressed concerns at the April 23 meeting regarding her right to attack the PSA based on Husband's disclosure violation if she signed, but she signed the agreement on April 26, 2004. She added the following language: "My signature shall not constitute waiving my Rule 60(c) rights concerning Husband's Rule 26.1 violation regarding this agreement."

¶ 6 In the PSA, Wife agreed to "put" her interest in DSN to Husband. Husband agreed to execute a promissory note to Wife for $500,000 as an "equalization payment." Husband agreed to transfer the marital residence to Wife. The parties also agreed to an appraisal process for the Sunshine Keys property, one of the RV properties in which EMB had an interest. Husband was to make a payment to Wife based on the value of the Sunshine Keys property as determined by the appraisal process.

¶ 7 At the close of the PSA negotiations in November 2003, Judge Burke stated with respect to the properties in which EMB had an interest that, "whether for a higher or lower value—any intervening sales on every property, other than Sunshine Keys—[Husband] now gets those benefits, except that he has to pay [Wife] accelerated payments against the note." Counsel for Wife confirmed this understanding. Husband paid the equalization payment on May 17, 2004, and the Sunshine Keys payment on September 23, 2004.

¶ 8 On June 18, 2004, Wife filed a Rule 60(c) motion for relief from the decree of dissolution and the property settlement agreement. As grounds for relief, she claimed that Husband had violated Rule 26.1 by not disclosing to Wife that Lehman had decided to sell the RV properties in the summer of 2003. Wife claimed that a key issue in negotiating the PSA was the value of EMB's interest in the RV properties. She argued that, had she known Lehman had decided to sell the RV properties, Wife's efforts at valuing the RV properties and her decision to "put" her interest in DSN to Husband would have been affected. Wife stated that whether she received less than her share of the value of the RV properties in the PSA remained to be determined but that the court

should grant relief from the decree of dissolution and PSA based solely on Husband's alleged discovery violation.

¶ 9 The facts of the alleged discovery violation are as follows. The discovery special master, Michael McCarthy, indicated that the discovery process, including the valuations of the properties in which EMB had an interest, was ongoing through November 2003. On September 16, 2003, Wife's valuation consultant, Ronald Freeman, met with Husband to review documents for the valuation process. McCarthy summarized the status of the dispute over the value of EMB's interest in the properties in a November 7, 2003 report. At that time, Lehman continued to argue that the individual partnerships in which Lehman and EMB had an interest should be "POOLED for purposes of determining profit, loss, preferences and residuals, rather than each partnership standing alone for such purposes." EMB also had an unresolved accounting issue dispute with Lehman that would substantially affect the value of EMB's interest in the individual partnerships. The valuation experts for both Husband and Wife agreed that "IF Lehman prevails, the parties have NO asset value in the partnerships." If Lehman did not prevail, Husband and Wife "would share substantial amounts." McCarthy was of the opinion that resolution of the issue would require litigation and may not be resolved "for years to come." In fact, the Delaware Court of Chancery resolved the issue in favor of EMB in its Memorandum Opinion.

¶ 10 Wife attached an affidavit submitted by Husband in the Delaware court litigation with her Rule 60(c) motion. In the affidavit, Husband said that in August 2003, "Lehman approached Edwards and myself [sic] about 'marketing' Lehman's interest in the RV portfolio." Lehman informed Edwards and Husband that it would handle the sales process but that Edwards and Husband would have the opportunity to "match" any offer Lehman received. Edwards and Husband met with the Lehman sales team, developed 2004 projections, redrafted an offering memorandum, and engaged in other activities related to the sales process. McCarthy, Free-

man, and Wife's counsel, Philip C. Gerard, all submitted affidavits stating that they were never told that Lehman had decided to market the RV properties. In deposition testimony, Freeman testified that, had he known Lehman was "marketing" the RV portfolio and that Husband was involved in preparing related financial information, he would have "followed up on it." Freeman also said that the financial information would have been "potentially relevant" to the valuation. McCarthy testified in deposition that, had he "known that there was active marketing going on," he would have questioned why the parties were going through the valuation process for the RV properties.

¶ 11 On July 11, 2005, the trial court granted Wife's Rule 60(c) motion for relief. The court entered a signed order on August 4, 2005. In its order, the trial court stated,

> Further proceedings will be necessary to determine the effect of this ruling, including but not limited to: (1) whether the entire settlement or portions thereof should be set aside; (2) whether additional discovery is appropriate; and (3) whether a trial date should be set.

The trial court also awarded Wife reasonable attorneys' fees and costs "incurred in connection with the [Rule 60(c) motion]."

¶ 12 Husband timely appealed the order granting Wife's Rule 60(c) motion. On October 31, 2005, the court entered a signed order requiring Husband to pay Wife $72,925.00 in attorneys' fees and $7,061.90 in costs. Husband timely appealed the award of fees and costs. This court consolidated the two appeals. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12–2101(B) (2003) and 12–120.21(A)(1) (2003).

### Discussion

#### 1. Rule 60(c) and the Property Settlement Agreement

 ¶ 13 Husband argues that the trial court may not relieve a party pursuant to Rule 60(c) from a property settlement agreement [1] that has not merged into the divorce

1. The parties refer to their document as a "prop- erty settlement agreement." The language of the

decree issued by the court. We view the more narrow question, pertinent here, to be whether Rule 60(c)(3) can be utilized to allow the court to reopen the approval it has given to a non-merged settlement agreement pursuant to A.R.S. § 25–317(B) (2007). We review this question of law de novo. *Nielson v. Patterson*, 204 Ariz. 530, 531, ¶ 5, 65 P.3d 911, 912 (2003). There is no Arizona case that resolves this issue. However, under the statutory scheme, we determine that whether a separation agreement has merged is of no consequence in determining that the court can reopen its determination that a "separation agreement is [or is not] unfair." A.R.S. § 25–317(B).

¶ 14 Arizona Revised Statutes § 25–317(A) addresses the effect of written separation agreements in dissolution of marriage proceedings. The statute states that parties may enter a separation agreement "containing provisions for disposition of any property." *Id.* The agreement is "binding upon the parties" if executed "in the absence of fraud or undue influence." *Keller v. Keller*, 137 Ariz. 447, 448, 671 P.2d 425, 426 (App.1983). However, even though the parties may be bound, "[t]he court is not bound by any such agreement and can, if it believes the agreement to be unfair or inequitable, reject or modify the agreement." *Id.* at 448, 671 P.2d at 426; *see also Wick v. Wick*, 107 Ariz. 382, 385, 489 P.2d 19, 22 (1971); *In re Estate of Harber*, 104 Ariz. 79, 88, 449 P.2d 7, 16 (1969); *In re Estate of Henry*, 6 Ariz.App. 183, 186, 430 P.2d 937, 940 (1967). The basis for the approval power of the court is set forth in our statutory scheme:

> [T]he terms of the separation agreement, except those providing for the support, custody and parenting time of children, *are binding on the court unless it finds*, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, *that the separation agreement is unfair.*

A.R.S. § 25–317(B) (emphasis added). Thus, if the court does not approve the parties' agreement, it is not "binding on the court."

*Id.* In that case it becomes unenforceable by the parties, whether or not it was previously binding upon them. The court then has two options: "it may request the parties to submit a revised separation agreement or may make orders for the disposition of property or maintenance." A.R.S. § 25–317(C).

¶ 15 Section 25–317 does not limit the court's authority to approve an agreement to instances when the separation agreement is to be merged into the decree, as contrasted with an agreement that is incorporated but not merged. *See LaPrade v. LaPrade*, 189 Ariz. 243, 247, 941 P.2d 1268, 1272 (1997) (discussing the distinction between terms that merge as contrasted with those that are incorporated); *Young v. Burkholder*, 142 Ariz. 415, 418–19, 690 P.2d 134, 137–38 (App. 1984) (same). Rather, all separation agreements reflecting property dispositions must be approved by the court. A.R.S. § 25–317(B). If a property settlement agreement has merged into the decree, the court's approval is expressly stated in the decree as the court has signed the decree into which the property settlement agreement has merged. In circumstances where the property settlement agreement has not merged, but only been incorporated, § 25–317(D) provides that *"the decree shall* identify the separation agreement as incorporated by reference and *state that the court has found the terms as to property disposition* and maintenance *not unfair."* (Emphasis added.) In this case, in compliance with the statutory scheme, the decree references the PSA and provides that *"Said Agreement is approved* and the property and debts of the parties are divided and distributed as set forth in said Agreement." (Emphasis added.)

¶ 16 Arizona Revised Statutes § 25–327(A) (2007) addresses when the trial court may modify or terminate the provisions of a decree of dissolution:

> [T]he provisions of any decree respecting maintenance or support may be modified or terminated only on a showing of changed circumstances.... *The provisions as to property disposition may not be revoked or modified, unless the court finds*

---

statute is a "separation agreement." A.R.S. § 25–317(B). We use the terms "property settlement agreement" and "separation agreement" interchangeably.

*the existence of conditions that justify the reopening of a judgment under the laws of this state.*

(Emphasis added.) The reopening of a judgment is governed by Rule 60(c)(3), which provides in part that "the court may relieve a party ... from a final judgment, order, or proceeding for ... fraud ..., misrepresentation or other misconduct of an adverse party."

¶ 17 In the above statutory scheme, a party would clearly be able to assert fraud, undue influence, or other misconduct as a ground for the trial court not to initially approve a settlement agreement. That the party discovers the conduct in question only after the trial court approves the agreement and enters the decree is not dispositive. Pursuant to A.R.S. § 25-327(A), the aggrieved party may file a Rule 60(c) motion requesting that the court relieve the party of the "provisions as to property disposition." Whether the "property disposition" merged or was only incorporated into the decree is irrelevant. In either case, the decree must expressly refer to the court's approval of the property disposition. It is that term of the decree—the court's approval—that is being reopened. Accordingly, pursuant to §§ 25-317(B), (C), (D) and -327(A), the property disposition approved in a non-merged settlement agreement is subject to Rule 60(c) relief.[2]

### 2. Application of Symington

■ ¶ 18 Husband argues next that the trial court incorrectly applied this court's statement in *Norwest Bank (Minnesota), N.A. v. Symington*, 197 Ariz. 181, 187, ¶ 26, 3 P.3d 1101, 1107 (App.2000), that relief under "Rule 60(c)(3) does not require a showing that the outcome of the case would have been different but for the nondisclosure." He argues that *Symington* only applies to cases involving judgments on the merits, not to a decree of dissolution entered after the parties settled. We disagree.

¶ 19 We review this question of law de novo. *Nielson*, 204 Ariz. at 531, ¶ 5, 65 P.3d at 912. In *Symington*, Norwest Bank sued Symington for a deficiency judgment for his failure to satisfy his obligation as a guarantor on a loan after foreclosing on the property. 197 Ariz. at 183, ¶ 3, 3 P.3d at 1103. After three years of litigation, the court permitted Symington to file an amended answer admitting the allegations as Symington lacked the financial resources to continue litigation. *Id.* at ¶ 4. The only remaining issue was to value the property on which Norwest Bank had foreclosed to determine the amount of the deficiency. *Id.* at ¶ 5. Norwest Bank submitted two appraisals valuing the property at foreclosure at $3 million, but it failed to disclose to Symington a previous appraisal valuing the property at $6 million. *Id.* at 183–84, ¶ 5–7, 3 P.3d at 1103–04. Symington filed a Rule 60(c)(3) motion alleging that the deficiency judgment was the product of Norwest Bank's violation of Rule 26.1. *Id.* at 184, ¶ 8, 3 P.3d at 1104. The trial court denied the motion. *Id.* at ¶ 10. We reversed on appeal.

¶ 20 In addition to finding that Norwest Bank's violation of Rule 26.1 constituted "misconduct" under Rule 60(c)(3), we found "that the nondisclosure substantially interfered with [the] ability to fully and fairly prepare [for trial]." *Id.* at 188, ¶ 32, 3 P.3d at 1108. The moving party bears the burden of showing substantial interference by either "establishing the material's likely worth as trial evidence or by elucidating its value as a tool for obtaining meaningful discovery." *Id.* at 187, ¶ 23, 3 P.3d at 1107 (quoting *Estate of Page v. Litzenburg*, 177 Ariz. 84, 93, 865 P.2d 128, 137 (App.1993)).

■ ¶ 21 *Symington* is not limited to cases that proceed to trial and a final judgment on the merits. It may apply to any Rule 60(c)(3) motion for relief based on misconduct involving Rule 26.1 disclosure violations. The purpose of the disclosure rules is to provide the parties "a reasonable opportunity to prepare for trial *or settlement.*" *Bryan v. Riddel*, 178 Ariz. 472, 476 n. 5, 875 P.2d 131, 135 n. 5 (1994) (emphasis added). The decree of dissolution in a dissolution of marriage proceeding is a final judgment, *In*

---

2. Given our disposition of the issue, we need not consider the parties' arguments regarding *La-*

*Prade* and related cases. These cases do not address the specific point at issue.

*re Marriage of Zale,* 193 Ariz. 246, 249, ¶ 10, 972 P.2d 230, 233 (1999) (citing *Wolf Corp. v. Louis,* 11 Ariz.App. 352, 355, 464 P.2d 672, 675 (1970)), regardless of whether it was entered pursuant to a settlement agreement. We hold that, to the extent the trial court did rely on *Symington,* such reliance was proper.

### 3. Pertinent Procedural Issues

¶ 22 Before addressing the remaining issues, we must address the procedural aspects of the court's ruling. In *Lamb v. Arizona Country Club,* 124 Ariz. 239, 239, 603 P.2d 510, 510 (App.1979), the Arizona Country Club filed an action to quiet title to a private roadway. The Lambs and the Club reached a settlement prior to trial and signed a stipulated judgment embodying the terms of the agreement. *Id.* Thereafter, the Lambs filed a Rule 60(c) motion for relief. *Id.* The trial court denied the motion on its merits and this court affirmed. *Id.* at 240, 242, 603 P.2d at 511, 513.

¶ 23 *Lamb* did not address Rule 60(c) as it relates to dissolution proceedings. However, the case did address similar procedural issues to those in the present case. In *Lamb,* the procedural issue was how to ensure the non-moving party the protections of contract law regarding the underlying settlement agreement while at the same time avoiding the inefficiencies of an independent rescission action.

> In order to avoid the circuity of action, the trial court could determine from the memoranda submitted with the Rule 60(c) motion that a sufficient preliminary showing has been made regarding the infirmity of the settlement agreement and vacate the judgment on condition that the issue relating to the avoidance of the settlement agreement be alleged by way of supplemental pleadings and adjudicated before it in the normal course of trial procedure. The outcome would then determine whether the judgment should either be re-entered or whether the parties should be restored to their pre-settlement position under the original pleadings.

*Id.* at 240 n. 2, 603 P.2d at 511 n. 2.

¶ 24 The trial court in the present case followed a similar procedure. Wife filed a Rule 60(c) motion with a memorandum and attached exhibits. Husband filed a response with attached exhibits as well. The trial court granted Wife's Rule 60(c) motion for relief based on the submitted memoranda and exhibits. However, the trial court did not vacate the property settlement agreement. Instead, it stated that "[f]urther proceedings [were] necessary to determine the effect of this ruling, including but not limited to: (1) whether the entire settlement or portions thereof should be set aside; (2) whether additional discovery is appropriate; and (3) whether a trial date should be set."

¶ 25 We regard the trial court's order granting Wife's Rule 60(c) motion as resolving preliminary issues only. The trial court determined that a disclosure violation constituting misconduct under Rule 60(c)(3) occurred. This determination is sufficient to open the decree so that the court can reexamine, pursuant to A.R.S. § 25–317(B), whether "the separation agreement is unfair." Accordingly, our discussion in the next section as to findings pertains only to whether the findings of fact were sufficient and supported for purposes of making a determination that misconduct under Rule 60(c)(3) occurred.

¶ 26 We note that the present case is different from *Lamb* in at least one important respect. In the *Lamb* setting, the court would make a preliminary determination that the settlement agreement was invalid due to fraud or misrepresentation. 124 Ariz. at 240 n. 2, 603 P.2d at 511 n. 2. The court would then open the stipulated judgment and adjudicate the settlement agreement considering the newly asserted contractual defenses. *Id.* On the other hand, in our present setting involving dissolution proceedings, the basis for the court's ability to open the decree and reexamine the fairness of the property settlement agreement is the approval requirement found in A.R.S. § 25–317(B). Further proceedings are then necessary to determine whether "the [property settlement] agreement is unfair," A.R.S. § 25–317(B), not whether there was fraud or misrepresentation in the formation of the contract between the parties. The court must consider the information unknown to it and the moving

party, due to the misconduct, and determine whether the new information affects the fairness of the agreement it previously approved pursuant to § 25–317(B).

### 4. Sufficiency and Supportability of Findings of Fact

¶ 27 Husband argues that the trial court made insufficient findings of fact to support granting the motion for relief or, in the alternative, that the findings were not supported by the evidence. We review a decision to grant a Rule 60(c) motion for an abuse of the court's discretion. *Johnson v. Elson*, 192 Ariz. 486, 488, ¶ 9, 967 P.2d 1022, 1024 (App. 1998).

¶ 28 To grant a motion for relief pursuant to Rule 60(c)(3), the trial court must find that the adverse party engaged in "fraud ..., misrepresentation or other misconduct." A Rule 26.1 discovery violation may qualify as "other misconduct." *Symington*, 197 Ariz. at 186, ¶ 21, 3 P.3d at 1106. Rule 26.1(9) requires a party to disclose all documents "which that party believes may be relevant to the subject matter of the action, and those which appear reasonably calculated to lead to the discovery of admissible evidence." We emphasized in *Symington* that the duty to disclose is triggered by a determination that a party " 'may' have relevant knowledge." 197 Ariz. at 185, ¶ 15, 3 P.3d at 1105. In addition to proving misconduct, the moving party must show "substantial interference" by either "establishing the material's likely worth as trial evidence or by elucidating its value as a tool for obtaining meaningful discovery." *Id.* at 187, ¶ 23, 3

P.3d at 1107 (quoting *Estate of Page*, 177 Ariz. at 93, 865 P.2d at 137).

¶ 29 The trial court found that Lehman had decided to market the RV portfolio in the summer of 2003. Husband knew of these activities. The trial court agreed with Wife that the undisclosed information was material to the value of the RV portfolio, citing as evidentiary support the depositions of McCarthy and Freeman.[3] The court found that the financial matters of the case were important and that the value of the RV portfolio was material and relevant. Husband claims that the "critical valuation issues" in the dissolution case were EMB's pooling and accounting disputes with Lehman, not the value of the underlying RV properties. While the disputes with Lehman were important, the trial court did not abuse its discretion in finding that the value of the underlying portfolio was also material and relevant. The above findings are sufficient to support the necessary finding of a duty to disclose under Rule 26.1 and are supported by the evidence.[4]

¶ 30 The trial court's findings also support the additional finding of "substantial interference." *Symington*, 197 Ariz. at 187, ¶ 23, 3 P.3d at 1107. The trial court stated that the information was relevant to Wife's decision to "put" her interest in DSN to Husband and to "determine whether additional discovery was appropriate" before settling. These factual conclusions by the court were supported by the evidence. Whether Wife would ultimately have made a different decision is unimportant. *See id.* at n. 1, ¶ 26 ("Rule 60(c)(3) does not require a showing that the outcome of the case would have been different....").[5]

---

3. The trial court did not cite specific passages from the depositions, but Freeman testified that he would have "followed up on [knowledge that Lehman had decided to market the RV portfolio]" and that the financial information being prepared by Husband would have been "potentially relevant." McCarthy testified in deposition that had he "known that there was active marketing going on," he would have questioned why the parties were going through the valuation process for the RV properties.

4. Husband makes much of the distinction between Lehman's decision to "market" the RV portfolio, which he argues was immaterial, and a decision to "sell" the portfolio, which he claims

Lehman did not make until after the settlement agreement. The trial court was not persuaded by this distinction. We note that the court ultimately did not equate "market" with "sell," as it found that Lehman's decision to "market" was material because it "made an asset sale more likely."

5. In a minute entry dated March 31, 2005, the trial court "set aside [specific times] if needed for an evidentiary hearing." At the close of oral argument on the Rule 60(c) motion, counsel for Husband said that he "was going to ask for a hearing if [the trial court] believes that there [sic] a prima fascia [sic] basis to the motion because [he thought] a lot of what was said here was

¶ 31 Accordingly, we hold that the trial court's findings of fact were supported by the evidence and sufficient to support a determination that a discovery violation qualifying as misconduct under Rule 60(c)(3) occurred.[6] As noted, further proceedings will be necessary for the court to determine whether the PSA was "unfair" pursuant to A.R.S. § 25–317(B) and whether any actual relief in terms of adjusting the property disposition is required.

### 5. Equitable Defenses

■■■ ¶ 32 Husband argues that the trial court erred in not considering his assertion of the equitable defenses of ratification and the doctrine of unclean hands. We review this legal issue de novo. *Nielson,* 204 Ariz. at 531, ¶ 5, 65 P.3d at 912.

¶ 33 Husband claims the following actions by Wife, performed after she knew of Husband's failure to disclose evidence, constituted ratification of the PSA: (1) Wife sold the marital residence she had received under the PSA, (2) Wife accepted the equalization payment from Husband, and (3) Wife litigated the Sunshine Keys issue and accepted payment. Husband claims Wife has "unclean hands" because she chose to settle rather than bear the risk that EMB's interest in the individual partnerships would be declared worthless in litigation with Lehman. Wife argues that Husband's equitable defenses are meritless and that he cannot assert them as he has "unclean hands."

¶ 34 The trial court did not err in declining to consider Husband's equitable defenses in making a preliminary determination to open the decree and reexamine the fairness of the PSA. The trial court may consider Husband's equitable defenses in further proceedings insofar as such defenses have any bearing on whether the PSA is "unfair" pursuant to A.R.S. § 25–317(B).

### 6. Attorneys' Fees and Costs

■■■ ¶ 35 Husband also objects to the trial court's award of attorneys' fees on grounds that the trial court did not consider the financial resources of both parties and that the award was unreasonable.[7] We review the award of fees pursuant to A.R.S. § 25–324 (2007) for abuse of the court's discretion. *Medlin v. Medlin,* 194 Ariz. 306, 309, ¶ 17, 981 P.2d 1087, 1090 (App.1999).

¶ 36 The trial court may, "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings," award a "reasonable amount" to a party in a dissolution proceeding "for the costs and expenses of maintaining or defending any proceeding under this chapter." A.R.S. § 25–324.

■■■ ¶ 37 In *Appels–Meehan v. Appels,* 167 Ariz. 182, 185, 805 P.2d 415, 418 (App. 1991), we denied a request for fees under A.R.S. § 25–324 as the record was "inadequate to make a determination" of who should bear costs. The Husband in *Appels*

---

factually false." The court replied, "I will consider it as I review everything, but I see absolutely no basis for an evidentiary hearing at this point." The court never held an evidentiary hearing.

The trial court has "no authority to grant relief without some evidence to support the claim on which [the] application for relief depended." *Lawwill v. Lawwill,* 21 Ariz.App. 75, 78, 515 P.2d 900, 903 (1973). In the present case, sufficient evidence existed in the form of additional affidavits and previous evidence before the court. Thus, no evidentiary hearing was required. Nor is an evidentiary hearing always necessary to establish a Rule 26.1 discovery violation that constitutes misconduct under Rule 60(c)(3). *See Symington,* 197 Ariz. at 184, ¶ 10, 3 P.3d at 1104 (indicating only that the trial court heard oral argument on a Rule 60(c) motion for a Rule 26.1 violation). Some aspects of alleged Rule 26.1

violations require hearings, typically when the sanction is an entry of default, *see Lenze v. Synthes, Ltd.,* 160 Ariz. 302, 305, 772 P.2d 1155, 1158 (App.1989), but an entry of default is not at issue here.

6. Husband also argues that the findings of fact were insufficient under Rule 52(a). He did not make a specific request for findings of fact as required by Rule 52(a). Even had he made such a request, the trial court's findings met the Rule 52(a) standards as they were "sufficiently specific to allow an appellate court 'to test the validity of the judgment.' " *Miller v. Bd. of Supervisors,* 175 Ariz. 296, 299, 855 P.2d 1357, 1360 (1993) (quoting *Gilliland v. Rodriquez,* 77 Ariz. 163, 167, 268 P.2d 334, 337 (1954)).

7. Given our disposition of this issue, we need not consider Husband's other objections to the award of attorneys' fees and costs.

84

argued that "the trial court received no evidence and entered no findings regarding the financial condition of the respective parties." *Id.* In *Gerow v. Covill,* 192 Ariz. 9, 19, ¶ 45, 960 P.2d 55, 65 (App.1998), this court denied the husband's request for fees because "he provide[d] no information about the financial resources of either party nor d[id] he provide evidence supporting his claim for fees." In *Magee v. Magee,* 206 Ariz. 589, 592, ¶ 17, 81 P.3d 1048, 1051 (App.2004), we stated that "the court is obligated to consider factors such as the degree of the resource disparity between the parties, the ratio of the fees owed to the assets and/or income of each party, and other similar matters" when making an award. A party may be able to pay and still receive an award of fees. *Id.* at 593, ¶ 18, 81 P.3d at 1052. "[R]elative financial disparity between the parties is the benchmark for eligibility." *Id.*

¶ 38 In the present case, Wife requested fees and costs in her reply brief in support of her Rule 60(c) motion, dated May 9, 2005. Wife and Husband did not submit financial information following the request. The record contains affidavits of financial information filed by Husband in February 2002 and November 2004. The record contains Wife's affidavit of financial information from April 2002. The record also contains the PSA, verification of the payments received by Wife pursuant to the PSA, and information on the sale of the marital residence. The record contains evidence that Husband prevailed in the Delaware litigation; however, there is no indication of the impact this had on Husband's financial situation. In awarding fees and costs, the court stated that it had "considered the financial resources of both parties, as well as the reasonableness of their positions."

¶ 39 For the following reasons, we find that the award of attorneys' fees and costs was an abuse of the court's discretion. First, the above financial information contained in the record was inadequate to determine who should bear costs pursuant to A.R.S. § 25–324. The court awarded fees in July 2005, more than three years after Wife's last affidavit of financial information and eight months after Husband's last financial affidavit. The other information in the record was also inadequate to determine the

parties' financial status. Second, A.R.S. § 25–324 does not establish a prevailing party standard for awarding fees and costs. *See Burnette v. Bender,* 184 Ariz. 301, 306, 908 P.2d 1086, 1091 (App.1995) (stating that whether a party prevails is irrelevant to A.R.S. § 25–324). When it awarded Wife fees and costs, the trial court stated that it had "previously advised the parties and counsel that it would likely award attorneys' fees and costs *against the losing party* pursuant to A.R.S. § 25–324." (Emphasis added.) This statement reflects a prevailing party standard, which is not the standard applicable under § 25–324. The court may consider fees at the conclusion of this matter.

### Conclusion

¶ 40 For the foregoing reasons, we affirm the reopening of the decree to consider whether further relief under Rule 60 is appropriate. We vacate the award of attorneys' fees and costs. We remand the case for further proceedings consistent with this decision. We decline to award Wife reasonable attorneys' fees on appeal pursuant to A.R.S. § 25–324, without prejudice to an award of fees to either party at the conclusion of this matter.

MAURICE PORTLEY, P.J., and SUSAN A. EHRLICH, J., concur.

