NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

BRANDY TOMSICH, *Petitioner/Appellant*,

*v.*

JOHN TOMSICH, *Respondent/Appellee*.

No. 1 CA-CV 22-0314 FC
FILED 2-16-2023

Appeal from the Superior Court in Maricopa County
No. FN2020-097762
The Honorable David E. McDowell, Judge

**VACATED AND REMANDED**

COUNSEL

The Hogle Firm PLC, Mesa
By Nathan J. Hogle
*Counsel for Petitioner/Appellant*

Rowley Law Group PLLC, Mesa
By Scott R. Rowley
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

---

Chief Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge Paul J. McMurdie joined.

---

**C A T T A N I**, Judge:

¶1            Brandy Tomsich ("Wife") appeals from the superior court's award of attorney's fees in favor of John Tomsich ("Husband") in this dissolution case.  For reasons that follow, we vacate the award and remand for reconsideration.

**FACTS AND PROCEDURAL BACKGROUND**

¶2            Husband and Wife were married in 2014.  Husband was in the military at the beginning of the marriage and continued his career as an air traffic controller after leaving the service.  Wife had started nursing school at the time of marriage but deferred her education for two years to accommodate Husband's posting abroad.  Wife ultimately completed nursing school after returning to the U.S., paid for in part with Husband's G.I. Bill benefits.

¶3            Wife filed and served her petition for dissolution of marriage in December 2020.  She declined Husband's March 2021 settlement offer, which would have assigned Husband his entire retirement account (valued at over $93,000 and earned entirely during the marriage) and granted no spousal maintenance.  The parties ultimately reported that they had reached informal agreements on the division of community property and debts, and the court set trial on Wife's request for spousal maintenance of $1,500 per month for 3 years.

¶4            At the beginning of trial, the parties recited the terms of a property settlement agreement on the record.  *See* Ariz. R. Fam. Law P. ("Rule") 69(a)(2).  They agreed that Wife would receive $37,720 and Husband $30,113.23 (in effect, an equalization payment of just over $3,800 from Husband to Wife) from proceeds from the sale of the marital home.  As described by Husband's counsel, the agreement accounted for funds from the sale of the house, the parties' 2020 tax refund, the parties' vehicles with associated debt, and community credit card debt.  The stated agreement did not mention or otherwise account for the single largest

community asset—Husband's retirement account—even though both parties' pretrial statements requested the account be divided equally by QDRO. Nevertheless, the parties agreed on the record that each would keep the personal property in their possession, and the court approved the agreement as fair and equitable.

¶5            After trial, the court denied Wife's request for spousal maintenance, finding that Wife did not meet any of the five qualifying criteria under A.R.S. § 25-319(A). The court also awarded Husband a portion of his attorney's fees under A.R.S. § 25-324(A), finding no substantial disparity of financial resources between the parties and that Wife had acted unreasonably in several regards during the litigation:

> [1] [Wife] did not fully participate in discovery and did not disclose her rental costs until the eve of trial;

> [2] [Wife] understated her income;

> [3] [Wife's] position regarding spousal maintenance was not supported by Arizona law and there was no evidence that she made a substantial contribution to [Husband's] career or earning capacity or that she lacked the ability to be self sufficient. Arizona law awards spousal maintenance to promote self sufficiency and [Wife] already had the ability to be self sufficient based on her earnings and reasonable expenses[; and]

> [4] [Wife] did not engage in settlement efforts in a timely fashion as the settlement offer made in March 2021 was substantially similar to that agreed upon [at trial].

The court entered judgment awarding Husband just over $9,000 in attorney's fees, and Wife timely appealed. We have jurisdiction under A.R.S. § 12-2101(A).

**DISCUSSION**

**I.      Award of Attorney's Fees Under A.R.S. § 25-324(A).**

¶6            Wife's appeal challenges only the award of attorney's fees in favor of Husband; she does not otherwise contest the dissolution decree. The superior court is authorized to award reasonable attorney's fees to a party to dissolution proceedings "after considering the financial resources of both parties and the reasonableness of the positions each party has taken

throughout the proceedings." A.R.S. § 25-324(A). We review such an award for an abuse of discretion. *Murray v. Murray*, 239 Ariz. 174, 179, ¶ 20 (App. 2016). The award is subject to reversal, however, if the record does not adequately support it or if it is grounded in an error of law. *See Breitbart-Napp v. Napp*, 216 Ariz. 74, 84, ¶ 39 (App. 2007); *In re Marriage of Williams*, 219 Ariz. 546, 548, ¶ 8 (App. 2008).

¶7         Here, although the record supports some facets of the superior court's ruling, certain factual anomalies—including those related to the disposition of Husband's retirement account—undermine other considerations as to the parties' financial resources and the reasonableness of Wife's positions. We thus vacate the award and remand for the superior court's reconsideration.

### A.     Parties' Financial Resources.

¶8         The superior court's first consideration in determining a fee award in this context is the "financial resources of both parties." A.R.S. § 25-324(A). This involves a comparative assessment of the "relative financial disparity in income and/or assets" between the spouses, including each party's ability to pay their own (and the other's) fees and "other similar matters." *Magee v. Magee*, 206 Ariz. 589, 589, 592–93, ¶¶ 1, 17–18 (App. 2004).

¶9         Here, the superior court found "no substantial disparity of financial resources between the parties." Wife challenges this finding based on the parties' respective incomes, arguing that undisputed evidence showed that she earned only about half as much as Husband. The record shows that, even at Wife's higher pay rate for working nightshifts, her annual gross income totaled around $60,000, whereas Husband's yearly income exceeded $110,000.

¶10        Husband asserts that despite the difference in gross incomes, the parties' *disposable* incomes after expenses were roughly equal. Although the appellate record is not entirely clear, Husband's AFI showed that his total monthly income exceeded expenses by over $4,000. In contrast, Wife testified that (before adding potential future housing expenses) her disposable income was only around $1,100.

¶11        We note that, anomalously, the record on appeal does not include Wife's AFI, which should have clearly stated her monthly income and expenses. Although the court admitted Wife's AFI as Exhibit 32, the exhibit filed in the record was a copy of *Husband's* AFI instead. While the court also heard testimony about Wife's income and expenses, the misfiled

exhibit may have influenced its assessment of the parties' respective financial resources.

¶12     As to other assets, Husband notes that Wife received several thousand dollars more in cash from the property settlement. But neither Husband nor the court acknowledged that Husband retained his retirement account in its entirety—the single most valuable community asset, worth over $93,000 at the time of service.

¶13     Given the considerable disparity of gross income, along with a misfiled exhibit that potentially misled the court as to Wife's disposable income, and omission of at least one substantial asset retained by Husband, the record as it currently stands does not support the court's finding of no significant disparity of financial resources. *Cf. Breitbart-Napp*, 216 Ariz. at 84, ¶ 39.

### B.     Reasonableness of Wife's Positions.

¶14     The court's second consideration in awarding fees is the objective "reasonableness of the positions each party has taken throughout the proceedings." A.R.S. § 25-324(A); *Williams*, 219 Ariz. at 548, ¶ 10. Here, the court cited four unreasonable positions taken by Wife. Although the record supports the court's assessment of two of the four, the factual anomaly regarding the disposition of Husband's retirement account undermines the court's finding of unreasonableness as to Wife's settlement efforts and her request for spousal maintenance.

#### 1.     Settlement Efforts.

¶15     The superior court found Wife had unreasonably failed to timely engage in settlement efforts, citing substantial similarity between the offer Husband made in March 2021 and the Rule 69 agreement ultimately entered in December 2021. Wife contests this characterization, asserting that Husband's initial offer unreasonably declined to split the value of his retirement account, and that the approximately $3,800 equalization payment in the December agreement was a major concession, ostensibly reflecting her share of that account.

¶16     Objectively, the terms *expressly* accounted for in the Rule 69 agreement were substantially similar to those Husband had offered the previous March. Both provided for an equal split of proceeds from the sale of the marital home and an equal division of the parties' 2020 tax refund. Both likewise assigned the parties their respective vehicles. Although the final agreement (unlike the initial offer) granted Wife over $4,000 for her

share of the equity in Husband's motorcycles, that amount was largely offset by an equal division of approximately $6,000 in community credit card debt that Husband had initially offered to assume.

**¶17** But the parties' intended disposition of Husband's retirement account—the single most valuable community asset—seems to have shifted over time. Husband's initial proposal would have granted him the entirety of his retirement account, valued at over $93,000 and earned entirely during the marriage, without any equalization or offset. By the time of trial, in contrast, Husband (as well as Wife) took the position that Husband's retirement account should be split evenly by QDRO.

**¶18** The agreement read into the record did not expressly reference or otherwise account for Husband's retirement account. Wife now argues that the equalization payment in the ultimate agreement divided the value of that account. It did not. That payment accounted for the division of the marital residence, the parties' vehicles, their tax refund, and community credit card debt—but not Husband's retirement account. Husband, on the other hand, now argues that he "never changed his position that each party would keep their own retirement accounts without offset to each other." That, too, is false. He had changed his position at least two months before trial, and his pretrial statement asked for equal division of his retirement account by QDRO, which he listed as an uncontested issue.

**¶19** Nevertheless, the parties' agreement on the record that each would keep any other personal property in their possession arguably assigned Husband that account—consistent with Husband's initial position. But there is no explanation for the parties' omission of any express provision accounting for this substantial asset, and the record is not at all clear whether the superior court would or could have found the agreement fair and equitable if it knew of the omission. *See* A.R.S. § 25-317(B); *see also Hutki v. Hutki*, 244 Ariz. 39, 44–45, ¶¶ 29–30, 32 (App. 2018) (superior court must independently determine whether the parties' proposed property settlement is fair and equitable); *cf. Buckholtz v. Buckholtz*, 246 Ariz. 126, 130–31, ¶¶ 12, 16 (App. 2019) (court must have adequate record basis to assess fairness).

**¶20** To be clear, the fairness of the Rule 69 agreement itself is not at issue on appeal. But the superior court's awareness of the omitted asset—and especially the fact that Husband had reversed his settlement position as to this asset after his initial offer—could have a substantial

bearing on its assessment of Wife's reasonableness for purposes of the attorney's fees award.

## 2. Request for Spousal Maintenance.

**¶21** The superior court found that Wife's request for spousal maintenance "was not supported by Arizona law," citing a lack of evidence of significant contributions to Husband's career or inability to be self-sufficient—and specifically finding to the contrary that Wife's earnings and expenses showed present self-sufficiency. *See Schroeder v. Schroeder*, 161 Ariz. 316, 321 (1989) (noting that the "aim [of spousal maintenance] is to achieve independence for both parties"). Highlighting the fact-intensive inquiry at issue, Wife urges that her request was not objectively unreasonable, even if it was within the court's discretion to deny it.

**¶22** Wife's reticence to timely provide basic income and expense information—and her conflation of gross and net income—undermined the viability of her earnings-based request. *See infra* ¶¶ 25–26; *see also* A.R.S. § 25-319(A)(2). But the court did not consider the imbalance created by awarding Husband his retirement account without offset when assessing whether Wife had or received sufficient property to meet her needs. *See supra* ¶ 12; *see also* A.R.S. § 25-319(A)(1). Similarly, a delay in professional education for the benefit of the other spouse can support eligibility for spousal maintenance if it results in a significant reduction in career opportunities. *See* A.R.S. § 25-319(A)(4). Although Wife deferred nursing school for only two years and had completed her education (with Husband's financial support) by the end of the marriage, even a two-year delay could plausibly support a modest, short-duration award. Even if ultimately unsuccessful, Wife's request for spousal maintenance was not entirely inconsistent with Arizona law.

**¶23** To be sure, the superior court could likewise consider that Wife never provided evidence to show whether or how the deferral of her education affected her career or earnings. And Wife never provided any reasonable basis for the amount ($1,500 per month) and duration (3 years) of her request. On remand, the superior court retains the discretion to consider the reasonableness of Wife's positions in support of her request for spousal maintenance, even though the fact of the request was not itself unreasonable.

### 3. Other Unreasonable Positions.

¶24 To limit the scope of the litigation on remand, we note that the record supports the court's other findings regarding the reasonableness of Wife's positions during the proceedings.

¶25 First, the court found that Wife had unreasonably failed to "fully participate in discovery" and to "disclose her rental costs until the eve of trial." Wife asserts that because she did not have any current rental expenses while living with her parents, Rule 49 did not require her to disclose potential future rental expenses. But Rule 49 requires disclosure of an AFI if spousal maintenance is requested, and an AFI includes housing expenses—and permits a party to list "anticipated expenses." Rule 49(f)(1); Rule 97, Form 2. To the extent Wife intended to rely on anticipated rental expenses to support her claim for spousal maintenance, the record supports the superior court's conclusion that she acted unreasonably by failing to timely update her disclosures or otherwise ensure Husband was fairly informed of the basis for her claim. *See* Rule 49(a)(1), (b)(2)(A). Moreover, Wife's deposition was replete with uninformative or evasive answers, especially those related to her income or expenses. Accordingly, the superior court had ample basis to fault Wife for her disclosure and discovery conduct.

¶26 Second, the court found that Wife had "understated her income." Wife contends that she accurately reported her income based on her rate of pay, but that confusion arose because her paychecks varied due to overtime pay or shift differentials for nightshift. Although Wife's AFI does not appear in the record, *see supra* ¶ 11, Wife's pretrial statement claimed monthly income of only $3,100, far less than the gross income reflected on her contemporaneous pay stubs. Although $3,100 per month appears roughly accurate for Wife's *net* pay, the statement (without clarification) created at least a misleading impression as to her income. The court did not err by finding this to be unreasonable.

## II. Attorney's Fees on Appeal.

¶27 Husband requests an award of attorney's fees on appeal under A.R.S. § 25-324, and he asks that we impose fees as a sanction under ARCAP 25 for Wife's filing of what he characterizes as a frivolous appeal. Considering the relevant statutory factors and our ruling, we deny his request.

## CONCLUSION

**¶28** For the foregoing reasons, we vacate the award of attorney's fees in favor of Husband and remand for reconsideration. Our decision does not limit the superior court's discretion on remand to grant (or deny) attorney's fees based on its independent assessment of the statutory factors after accounting for the anomalies described above.



AMY M. WOOD • Clerk of the Court
FILED: AA