3 P.3d 1101

NORWEST BANK (MINNESOTA), N.A., as Custodian for various Pension Funds, Plaintiff–Appellee,

v.

J. Fife SYMINGTON, III, Defendant–Appellant.

No. 1 CA–CV 99–0240.

Court of Appeals of Arizona, Division 1, Department B.

Jan. 6, 2000.

---

Mariscal, Weeks, McIntyre & Friedlander, P.A. By Robert A. Shull, David Rodgers, Phoenix, for Defendant–Appellant.

Morrison & Hecker L.L.P. By Michael C. Manning, Kristin L. Farnen, David E. Koval, Phoenix, for Plaintiff–Appellee.

## OPINION

SULT, Judge.

¶ 1 Appellant J. Fife Symington III appeals from the denial of his motion under Rule 60(c), Arizona Rules of Civil Procedure, to set aside a deficiency judgment obtained against him. We find that appellee Pension Funds, for whom Norwest Bank is custodian, unfairly obtained the judgment, and the trial court therefore erred in refusing to vacate the judgment.

## BACKGROUND

¶ 2 In 1990, Mercado Developers Limited Partnership obtained a $10 million loan from appellee to provide permanent financing for the Mercado shopping center. As security for the loan, the partnership gave appellee a deed of trust on the property. In addition, appellant and his wife executed an unconditional guarantee for the repayment of the loan.

¶ 3 The partnership defaulted on the loan, and appellant failed to satisfy his obligation as guarantor. Consequently, appellee foreclosed, sold the real estate, and in 1992 sued appellant for a deficiency judgment. Appellant counterclaimed, alleging among other things that appellee acted inappropriately and in bad faith in its handling of the loan.

¶ 4 From 1992 to 1995, the parties litigated the matter, filing various pleadings and motions. On June 1, 1995, appellee filed a motion for partial summary judgment, requesting that the court determine the fair market value of the property, establish the amount of the deficiency, and enter a judgment for that amount. In response, appellant filed a motion to dismiss his counterclaim and a motion for leave to file an amended answer in which he admitted all of appellee's allegations, except those concerning his wife's liability. Appellant gave as the reason for the admission his lack of financial resources to pursue the litigation further.

¶ 5 Pursuant to appellant's request, the trial court dismissed the counterclaim and proceeded to a summary judgment hearing on appellee's motion. Appellee submitted two appraisals of the Mercado, each setting the property's fair market value at foreclosure at about $3 million, and the court valued the property as of the time of foreclosure at $3,145,000, the amount of the credit bid made by appellee at the foreclosure sale. The court then established a deficiency amount of $8,728,893 and awarded that sum to appellee, together with prejudgment interest of $2,756, 819. The court signed a formal judgment in favor of appellee on August 11, 1995.

¶ 6 On September 20, 1995, appellant filed for Chapter 7 bankruptcy, seeking to discharge his debt to appellee. Appellee responded by filing an adversary proceeding to prevent such a discharge, alleging in essence that the debt was incurred through appellant's fraud. During the discovery phase of this proceeding, appellant became aware that appellee had obtained another real estate appraisal of the Mercado during the foreclosure proceeding. This appraisal was completed for appellee in 1993 by a professional real estate appraiser, Robert Francy, just a few months after the Mercado foreclosure and well before the conclusion of the deficiency proceeding. The Francy appraisal valued the Mercado at $6 million as of the appraisal date, but was never disclosed to appellant during the deficiency action.

¶ 7 Appellant also discovered some theretofore unknown specifics from another lawsuit in which appellee had sued its former investment managers for bad advice regarding real estate investments, including the Mercado. This case, which we will refer to as the "Miller" case, had been settled during the deficiency litigation and appellee had recovered $93.3 million. In this settlement, appellee's losses were detailed in a Damages Model which served as the basis for the settlement payment received by appellee. This Model included a calculation of appellee's loss on the Mercado loan at just over $5 million, approximately $3 million less than the principal amount of the deficiency judgment. Despite the settlement being concluded during the pendency of the deficiency

action, appellee never disclosed the settlement, the amount of the payment, or the Damages Model upon which the payment was based.

¶ 8 Based on the discovery of the Francy appraisal and the Miller settlement, appellant sought authorization from the bankruptcy court to return to state court and attempt to reopen the deficiency judgment. The bankruptcy court granted authorization, and on July 23, 1998, appellant filed a motion for relief from judgment pursuant to Rule 60(c)(2), (3), and (5) of the Arizona Rules of Civil Procedure. Appellant claimed that the deficiency judgment was invalid under subsection (3) because it was the product of appellee's misconduct in failing to disclose the Francy appraisal and the Miller settlement, which material would have given him a defense in the deficiency action. Appellant also alleged that the judgment should be set aside under subsection (2) because the material was newly discovered evidence, would have given him a defense in the action, and would have changed the result. Appellant's subsection (5) allegation was that the Miller settlement constituted satisfaction of the deficiency judgment.

¶ 9 In response, appellee contended that appellant's decision to abandon the defense of the deficiency action and admit the complaint had nothing to do with the evidence, but instead constituted a tactical decision. Appellee claimed that appellant sought to avoid a thorough discovery process that could have made him susceptible to further civil and criminal claims. Moreover, appellee asserted that appellant abandoned the deficiency action because he thought he could go into bankruptcy proceedings and get the judgment discharged. Appellee also alleged that if appellant did not possess the material complained of, it was because he had not pursued it, voluntarily choosing to be ignorant. Finally, with respect to the Miller settlement, appellee argued that the collateral source rule precluded appellant from obtaining any credit for the settlement and, in any event, the settlement did not include the loss on the Mercado caused by appellant's default.

¶ 10 The trial court heard oral arguments and denied appellant's motion, finding that the nondisclosure was irrelevant. In the trial court's view, appellant "voluntarily chose to abandon the defense of higher value for the Mercado Project in favor of the benefit of arguing a lower value, and then moving on to Bankruptcy Court." The court also found the collateral source rule precluded appellant from receiving any benefit from the Miller settlement. On March 1, 1999, a formal order denying the motion was filed and appellant timely appealed.

## ISSUES

1. Whether the trial court erred in denying appellant's motion for relief under Rule 60(c)(2), (3), or (5) of the Arizona Rules of Civil Procedure?

2. Whether the trial court erred in holding that the collateral source rule barred appellant from seeking credit for the Miller settlement?

## ANALYSIS

¶ 11 We review the denial of a Rule 60(c) motion under an abuse of discretion standard. See *Johnson v. Elson*, 192 Ariz. 486, 488, ¶ 9, 967 P.2d 1022, 1024, ¶ 9 (App. 1998). We consider it an abuse of discretion for a trial court to act arbitrarily or make decisions unsupported by fact or law. See *City of Phoenix v. Geyler*, 144 Ariz. 323, 328–29, 697 P.2d 1073, 1078–79 (1985).

### I. Rule 60(c)(3)

¶ 12 Because we deem the issue dispositive, we consider appellant's argument under subsection (3) of Rule 60(c) first. That subsection provides in pertinent part:

(c) On motion and upon such terms as are just the court may relieve a party or a party's legal representative from a final judgment, order or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation *or other misconduct* of an adverse party....

(Emphasis added). Appellant first asserts that appellee's *failure to disclose* the Francy appraisal and the Miller settlement was a violation of Rule 26.1, Arizona Rules of Civil

Procedure. Appellant then argues that such a discovery violation constitutes "misconduct" within the meaning of Rule 60(c)(3), and that the trial court erred in failing to so find.

¶ 13 For purposes of this case, we determine appellee's disclosure duty by reference to subsections (4) and (9) of Rule 26.1(a). These subsections provide:

Within the times set forth in subdivision (b), each party shall disclose in writing to every other party:

. . . .

(4) The names and addresses of all persons whom the party believes may have knowledge or information relevant to the events, transactions, or occurrences that gave rise to the action, and the nature of the knowledge or information each such individual is believed to possess.

. . . .

(9) A list of documents or, in the case of voluminous documentary information, a list of.the categories of documents, known by a party to exist whether or not in the party's possession, custody or control and which that party believes may be relevant to the subject matter of the action.

¶ 14 It is undisputed that appellee never expressly disclosed Mr. Francy's name, his appraisal, or the Miller settlement information during the course of the deficiency action. Appellee first excuses the nondisclosure by arguing that the disclosures it did make to appellant were made in the good faith belief that they were sufficient under the then relatively new Rule 26.1, or, alternatively, those disclosures would have led appellant, had he been diligent, to the evidence of Francy, his appraisal, and the Miller settlement. Appellee also argues that in any event, this material was irrelevant because appellant would not have used it. This is so, appellee asserts, because appellant's trial strategy was to prove a low value for the Mercado and show that such a value was due to appellee's wrongdoing.

¶ 15 Arizona courts interpret Rule 26.1 in accordance with its plain and obvious meaning, *see Jones v. Buchanan*, 177 Ariz. 410, 414, 868 P.2d 993, 997 (App.1993), and "in harmony with [its] underlying philosophy and purpose," *see Bryan v. Riddel*, 178 Ariz. 472, 477, 875 P.2d 131, 136 (1994). All that is required to trigger a duty to disclose under Rule 26.1(a)(4) or (9) is a determination that a person "may" have relevant knowledge or a document "may" have relevant content. And "relevance" for discovery purposes is quite broad, not limited to evidence that is admissible at trial but including information that may be useful solely because it reasonably may lead to admissible evidence. *See Brown v. Superior Court*, 137 Ariz. 327, 332, 670 P.2d 725, 730 (1983).

¶ 16 Extended discussion is not required to conclude that the nondisclosed information clearly meets the relevance standard of Rule 26.1(a). A debtor involved in an action for a deficiency judgment is not bound by what the creditor bid at the foreclosure sale. To· the contrary, pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 33–814 (Supp.1998), the debtor can contest the property's fair market value by presenting evidence to establish a value higher than the creditor's bid. An appraisal by a qualified appraiser establishing a substantially higher value for the Mercado than the value asserted by appellee would have significantly assisted appellant in presenting evidence that could have appreciably reduced the ultimate judgment against him. Likewise, the evidence from the Miller settlement, apparently establishing a loss of $5 million on the Mercado investment rather than the $8 million claimed in the deficiency action, would have been relevant for the same reason. In addition, the Miller information might have been relevant regarding the amount of a deficiency appellee could claim or even whether appellee suffered a loss at all.

¶ 17 Appellee's arguments against finding either a disclosure requirement for this evidence or a violation for its nondisclosure miss the point of Rule 26.1. The change sought to be made by the rule and the type of litigation behavior sought to be discouraged were described by Chief Justice Thomas Zlaket:

Rule 26.1 . . . states that at the outset of a case the parties must make a full, mutual and simultaneous disclosure of all relevant

information known by or available to them and their lawyers. In other words, no more "hide the pea." No longer will it be advantageous to play games of semantics ("If he'd have just asked the right question, I would gladly have disclosed the material"). Such practices have fostered delay and deception in the name and place of good lawyering, and have led to repetitious questions and requests posed in an imaginative variety of ways to counter clever evasive tactics.

Thomas A. Zlaket, *Encouraging Litigators to Be Lawyers: Arizona's New Civil Rules,* 25 Ariz. St. L.J. 1, 5 (1993).

¶ 18 Appellee arguing that if appellant had been diligent he would have found the evidence is the same as saying, "If he'd have just asked the right question, I would gladly have disclosed the material." Appellee's asserting that material highly probative of appellant's ultimate obligation would nevertheless have been useless to him is both speculative and illogical, and cannot transform the obvious relevance of the material into something else. Finally, appellee asserting that it tried in good faith to comply with what was then a relatively new Rule 26.1 is immaterial. Good faith is not the issue here; it is whether a disclosure was or was not required to be made. And on that point, we conclude that the evidence of the Francy name, his appraisal and the Miller settlement should have been disclosed by appellee during the deficiency proceeding.

■ ¶ 19 The next question is whether a Rule 26.1 violation constitutes "misconduct" under Rule 60(c)(3). As used in this rule, misconduct has been interpreted to include discovery violations, even when such violations stem from accidental or inadvertent failures to disclose material evidence. *See Anderson v. Cryovac,* 862 F.2d 910, 923 (1st Cir.1988); *Estate of Page v. Litzenburg,* 177 Ariz. 84, 93–94, 865 P.2d 128, 137–38 (App. 1994).

¶ 20 We acknowledge that in the cases finding misconduct based on a discovery violation, the violation arose from a failure to respond appropriately to an affirmative discovery request, such as an interrogatory or request to produce. *See, e.g., Anderson,* 862

F.2d at 927; *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir.1978);*Estate of Page,* 177 Ariz. at 94, 865 P.2d at 138. In this case, by contrast, the violation is not predicated on an affirmative request for discovery but on the general duty imposed by Rule 26.1 to disclose anything and everything that may be relevant without waiting for a specific discovery request. The question then becomes whether this difference should affect how we characterize a Rule 26.1 violation in the context of a Rule 60(c)(3) inquiry.

¶ 21 A major goal of Rule 26.1 is to eliminate, or at least significantly reduce, the need to resort to the various discovery tools in order to prepare a case for trial. "Hopefully, Rule 26.1 will eliminate the need for extensive discovery in most cases, assuming that counsel prepare disclosure statements honestly and carefully." *Zlaket, supra,* at 5. The attainment of this goal is advanced if counsel are on notice that a failure to comply with the rule can rob their clients of an otherwise valid judgment. We therefore hold that a failure to disclose evidence that may be relevant, regardless of whether the disclosure was required by a specific discovery request or by the general duty of Rule 26.1, can constitute misconduct under Rule 60(c)(3).

■ ¶ 22 In this case, we find that appellee failed to disclose material that it was required to disclose by the general duty found in Rule 26.1. We presume for purposes of this decision that the failure was inadvertent and that appellee was not motivated by bad faith. Nevertheless, we also find that this failure is enough to warrant a finding of misconduct by clear and convincing evidence, the standard by which misconduct under Rule 60(c)(3) must be shown. *See Estate of Page,* 177 Ariz. at 93, 865 P.2d at 137.

¶ 23 This does not conclude our inquiry, however, because proof of misconduct, standing alone, does not justify relief under Rule 60(c)(3). The movant must also show that the failure to disclose substantially interfered with the ability to fully prepare for trial. The court in *Estate of Page* described this requirement:

[T]he moving party must show that the misconduct substantially interfered with its ability fully and fairly to prepare for, and proceed at, trial. This burden may be shouldered either by establishing the material's likely worth as trial evidence or by elucidating its value as a tool for obtaining meaningful discovery. The burden can also be met by presumption or inference, if the movant can successfully demonstrate that the misconduct was knowing or deliberate. Once a presumption of substantial interference arises, it can alone carry the day, unless defeated by a clear and convincing demonstration that the consequences of the misconduct were nugacious.

177 Ariz. at 93, 865 P.2d at 137 (quoting *Anderson,* 862 F.2d at 926). The burden on the movant of showing substantial interference is by a preponderance of the evidence. *See* 12 James Wm. Moore *et al.,* Moore's Federal Practice § 60.43[4][b] at 60–138 (3d ed.1999).

¶ 24 In this case, because the trial court considered the nondisclosed material irrelevant, it made no finding whether the nondisclosure was inadvertent or was knowing and deliberate. For purposes of our analysis, we have already and will continue to assume the nondisclosure was inadvertent. Consequently, we will not apply the presumption or inference permitted by *Estate of Page* to the question whether the nondisclosure substantially interfered with appellant's ability to prepare and try his case.

¶ 25 With respect to the $6 million Francy appraisal, appellant's affidavit presented to the trial court established that he did not know that appellee had an appraisal from a qualified expert that valued the Mercado property at $6 million, with a date of valuation just a few months after appellee foreclosed. The same lack of knowledge is true of the Miller settlement, which was based on a Damages Model used by appellee to obtain the settlement, and which by establishing damages for the Mercado loss at some $5 million, indirectly valued the Mercado significantly higher than the $3 million claimed by appellee in the deficiency action. This information can be contrasted to what appellee did disclose, namely two appraisals, both in the neighborhood of $3 million, as well as its credit bid of $3,145,000 that was based on those appraisals. It was this last value that the trial court ultimately placed on the property for purposes of calculating the deficiency judgment.

¶ 26 Extended discussion is not necessary to establish that the nondisclosed material had significant worth to appellant as trial evidence, the measuring stick established by *Estate of Page* for determining whether a movant has established substantial interference. Appellant's averment to the effect that he would have used Mr. Francy, his appraisal, and the information from the Miller settlement to try to save himself at least $3 million is entirely credible and confirms that the nondisclosure substantially interfered with his ability to prepare for and try the deficiency action.[1]

¶ 27 Appellee nevertheless argues there was no interference because appellant would not have benefitted from disclosure. Appellee repeats the same argument it made against a finding of relevancy, namely that appellant had adopted a trial strategy that involved establishing a low value for the Mercado and showing that this low value was caused by appellee. Appellee also alleges that appellant wanted a low value because he was telling his other lenders, from whom he was seeking debt relief, that "he should not be pursued because he was broke." Appellee's third contention is that appellant was not prejudiced because he could have offered his own opinion of a higher value for the

---

1. Relief under Rule 60(c)(3) does not require a showing that the outcome of the case would have been different but for the nondisclosure. *See Anderson,* 862 F.2d at 931–32 (noting that relief may be proper despite the fact that the trial court found the disclosure of the report would have had no effect on the result at trial). This is so because the aim of subsection (c)(3) is to invalidate judgments which have been *unfairly* obtained, as contrasted to those that are *factually incorrect. See Rozier v. Ford Motor Co.,* 573 F.2d at 1339. We nevertheless note that the summary judgment ruling would likely have been different because the Francy appraisal and the Miller information would at the very least have created a genuine issue of material fact as to the fair market value of the Mercado at the time of foreclosure.

Mercado, an opinion that would be admissible in evidence because appellant was the owner.

¶ 28 Addressing these contentions in reverse order, we observe that there is a significant difference in the evidentiary value of a disinterested appraisal from a qualified expert as compared to the self-interested "opinion of value" from the owner of property. The latter simply cannot be considered an adequate substitute for the former. The same difference in evidentiary value characterizes the owner's opinion and the implied assertion of value found in the Damages Model from the Miller case.

¶ 29 As for appellant's alleged representations to his other lenders not to pursue him because he was "broke," there is no support in the record that these representations occurred. Even if true, however, we fail to see how such evidence helps appellee's argument. Appellant is not any less "broke" by a deficiency that, even if reduced by $3 million, would still be nearly $5 million.

¶ 30 As for appellee's assertion regarding appellant's trial strategy, which was adopted and relied upon by the trial court in refusing to set aside the judgment, we think it is best addressed by the *Anderson* case. There, a defendant accused of polluting groundwater by discharges from its tanning operation failed to disclose a groundwater study it had obtained that gave some support to the plaintiffs' position. *Anderson*, 862 F.2d at 913–15, 922–23. The defendant argued against sanctions for its nondisclosure by pointing out that the plaintiffs took a different approach during discovery and trial, adopting a strategy that the report would not have impacted. *Id.* at 931. The *Anderson* court responded:

> Beatrice urges that, because plaintiffs previously paid comparatively little attention to the tannery discovery, we are free to conclude that they would have followed the same strategy even if the Report had been timely produced. This exhortation strikes us as idle persiflage. Pretrial discovery follows no set course. An able litigator builds on the information available from time to time, changing direction as new leads emerge and old ones wither.

> Elementary logic suggests that plaintiffs likely slighted the tannery because they had no evidence, beyond guesswork and surmise, to show that it contributed to the pollution. The report could have filled this void....

*Id.*

¶ 31 Even assuming that appellant elected a trial strategy that involved showing the Mercado had decreased in value, *Anderson* illustrates that this is irrelevant to a determination whether Rule 60(c)(3) relief should be granted. Appellee's assertion that appellant would not have used the Francy appraisal and the Miller information is speculation and is entirely insufficient to rebut appellant's averment that he would have used the material. Moreover, appellee's assertion is illogical, given that appellant could have used the information to attempt to increase the value of the Mercado to $6 million but still have used the trial strategy attributed to him by showing that this represented a decrease from its original valuation at the time of the loan and arguing that the diminution was the fault of appellee.

¶ 32 We reject appellee's arguments and conclude that appellant has clearly and convincingly shown that appellee committed misconduct under Rule 60(c)(3) in failing to disclose Mr. Francy's name, his 1993 Mercado appraisal, and the Damages Model and settlement data from the Miller case. We further conclude that appellant has sustained his burden of proving by a preponderance of the evidence that the nondisclosure substantially interfered with his ability to fully and fairly prepare and try his case. Therefore, we find that appellant has satisfied the requirements of Rule 60(c)(3) and that the trial court abused its discretion in finding to the contrary. *See Ulibarri v. Gerstenberger,* 178 Ariz. 151, 164, 871 P.2d 698, 711 (App.1993) ("When the record reveals circumstances that this court believes warrant relief, we can overturn the trial court's discretionary ruling.")[2]

---

2. Appellee also argues that appellant's Rule 60(c)(3) motion was untimely. We disagree and affirm the trial court's finding that the motion was timely made.

## II.  Rule 60(c)(2) and (5)

¶ 33 We do not need to address appellant's contentions under subsections (2) and (5) of Rule 60(c) as we have granted him relief under subsection (3).

## III.  Collateral Source Rule

■  ¶ 34 In addition to arguing that the Miller information was relevant for valuing the Mercado, appellant also claimed that it was relevant because he should be able to obtain a credit against his deficiency for any sums from the Miller settlement that were paid appellee because of the Mercado loss. The trial court, as part of its ruling that the Miller information was not required to be disclosed, found that the collateral source rule would have precluded any such credit. The trial court borrowed the analysis the bankruptcy court had used in its case, the bankruptcy court having found that since the adversary proceeding sounded primarily in tort, the collateral source rule would preclude appellant from obtaining any benefit from the Miller settlement in that proceeding. The trial court in this case unaccountably adopted the reasoning used by the bankruptcy court in its tort proceeding and applied it to this deficiency proceeding, a contract action, and found that the collateral source rule provided that credit against the deficiency judgment need not be given where "the state court judgment was not the product of fraud and where the claim included tort and not just contract aspects." However, no tort claims had been pleaded in the deficiency action and the trial court did not support its conclusion by explaining how the deficiency action implicated any tort theories of recovery.

¶ 35 Appellant assigns error to this ruling. Appellee responds by arguing the correctness of the trial court's reasoning and adding that it is not just the collateral source rule that precludes appellant from claiming any benefit from the Miller settlement. Appellee also asserts that the damages recovered in that action were not premised on determining how each of the imprudent investments would have been compensated based upon the benefit of the bargain, which was the measure of recovery in the Mercado deficien-

cy action.  Rather, the damages were calculated by determining lost opportunity costs, represented by the increased return on portfolio that would have been realized had the Miller defendants not breached their fiduciary duties.  Because neither the respective damage calculation methods or the actual damages suffered were the same, appellee concludes that appellant cannot claim any benefit from the Miller settlement.

■  ¶ 36 In general, the collateral source rule allows a plaintiff to fully recover from a defendant for an injury even when the plaintiff has recovered from a source other than the defendant for the same injury.  *See Bustos v. W.M. Grace Development,* 192 Ariz. 396, 399, 966 P.2d 1000, 1003 (App. 1997).  In Arizona, the rule most often finds application in tort cases in which there is a recovery from both a tortfeasor and an insurer.  *See, e.g., In re Pima County Juvenile Action No. 45363-3,* 151 Ariz. 541, 541, 729 P.2d 345, 345 (App.1986).  Arizona law is clear, however, that the collateral source rule does not apply to ordinary breach of contract claims.  *See Grover v. Ratliff,* 120 Ariz. 368, 370, 586 P.2d 213, 215 (App.1978).  This distinction is derived from the policy underlying the rule:

> The collateral source rule is punitive; contractual damages are compensatory.  The collateral source rule, if applied to an action based on breach of contract, would violate the contractual damage rule that no one shall profit more from the breach of an obligation than from its full performance.

*Id.* (quoting *Patent Scaffolding Co. v. William Simpson Construction Co.,* 256 Cal. App.2d 506, 64 Cal.Rptr. 187, 191 (1967)).

¶ 37 On the limited record before us, we cannot decide whether appellant should ultimately be denied any benefit from the Miller settlement because of the differences, if any, in the actual damages or method of calculating damages in that case as compared to the deficiency action.  The trial court must conduct proceedings in which evidence of the legal theories of the case and the mechanics of the settlement can be explored and a determination made whether any part of the compensation received in the Miller settle-

ment represented all or any part of the deficiency created by appellant's default on his guarantee of the original loan. However, we do conclude that this deficiency proceeding is an ordinary breach of contract action to which the collateral source rule does not apply. Therefore, on remand the trial court shall not reduce any benefit ultimately found to be due appellant by reason of this rule.

### CONCLUSION

¶ 38 The trial court abused its discretion by failing to grant appellant's Rule 60(c)(3) motion and vacating the deficiency judgment. In addition, the trial court erred in applying the collateral source rule to the deficiency action. We vacate the deficiency judgment previously entered against appellant and remand this matter to the trial court for further proceedings consistent with this decision.

CONCURRING: JON W. THOMPSON, Presiding Judge, and WILLIAM F. GARBARINO, Judge.