NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IMH SPECIAL ASSET NT 168, LLC, an Arizona limited liability company;
IMH SPECIAL ASSET NT 161, LLC, an Arizona limited liability company,
*Plaintiffs/Appellees*,

*v.*

APERION COMMUNITIES, LLLP, an Arizona limited liability limited
partnership; ELADIO PROPERTIES, LLLP, an Arizona limited liability
limited partnership; DAVID P. MANIATIS, individually, and as trustee of
the DPM-TT TRUST under instruments dated June 6, 1995, by Eugenia
Hoof Grantor; and MARK FAUCHER, as trustee of the DPM-TT TRUST
under instruments dated June 6, 1995, by Eugenia Hoof Grantor,
*Defendants/Appellants*.

---

IMH SPECIAL ASSET NT 168, LLC, an Arizona limited liability company;
IMH SPECIAL ASSET NT 161, LLC, an Arizona limited liability company,
*Plaintiffs/Appellees*,

*v.*

NDM Trust, an irrevocable non-charitable trust, and ROBERT M.
SEMPLE, in his official capacity as current and sole successor Trustee of
the NDM Trust,
*Appellants.*

---

MCA FINANCIAL GROUP, LTD., by and through KEITH BIERMAN,
Receiver,
*Appellee.*

---

IMH SPECIAL ASSET NT 168, LLC, an Arizona limited liability company;
IMH SPECIAL ASSET NT 161, LLC, an Arizona limited liability company,
*Plaintiffs/Appellees,*

MCA FINANCIAL GROUP, LTD., Court Appointed Receiver, by and
through KIETH BIERMAN,
*Receiver/Appellees.*

REAVES LAW GROUP, by and through DAVID REAVES, Court
Appointed Receiver,
*Receiver/Appellees,*

*v.*

DAVID P. MANIATIS, individually, and as beneficiary of the David
Maniatis IRA, and as beneficiary of the Eugenia Hoof IRA; KATHY
MCQUITTY, individually; and UDALL LAW FIRM, LLP,
*Defendants/Appellants.*

MW2 INVESTMENTS, LLC,
*Party in Interest/Appellant.*

───────────────────────────────

IMH SPECIAL ASSET NT 168, LLC, an Arizona limited liability company;
IMH SPECIAL ASSET NT 161, LLC, an Arizona limited liability company,
*Plaintiffs/Appellees,*

MCA FINANCIAL GROUP, LTD., Court Appointed Receiver, by and
through KEITH BIERMAN; REAVES LAW GROUP, by and through
DAVID REAVES, Court Appointed Receiver,
*Receivers/Appellees,*

*v.*

DAVID P. MANIATIS, individually, and as beneficiary of the David
Maniatis IRA, and as beneficiary of the Eugenia Hoof IRA,
*Defendant/Appellant.*

───────────────────────────────

2

IMH SPECIAL ASSET NT 168, LLC, an Arizona limited liability company;
IMH SPECIAL ASSET NT 161, LLC, an Arizona limited liability company,
*Plaintiffs/Appellees,*

*v.*

ELADIO PROPERTIES, LLLP; DAVID MANIATIS; DPM-TT TRUST,
*Defendants/Appellants.*

———————————————

Nos. 1 CA-CV 13-0131, 1 CA-CV 14-0432, 1 CA-CV 15-0182, 1 CA-CV 15-
0413, 1 CA-CV 15-0474, 1 CA-CV 15-0475, 1 CA-CV 15-0514, 1 CA-CV 15-
0615 (Consolidated)
FILED 12-27-2016

———————————————

Appeal from the Superior Court in Maricopa County
Nos. CV2010-010943, CV2010-010990 (Consolidated)
The Honorable Eileen S. Willett, Judge (Retired)
The Honorable Lisa Daniel Flores, Judge

**VACATED AND REMANDED IN PART; DISMISSED IN PART**

———————————————

COUNSEL

Snell & Wilmer L.L.P., Phoenix
By Christopher H. Bayley, Benjamin W. Reeves
*Counsel for Plaintiffs/Appellees IMH Special Asset NT 168, LLC; IMH Special
Asset NT 161, LLC*

Udall Law Firm LLP, Tucson
By D. Burr Udall, Thomas D. Laue

Ronald Warnicke PLC, Phoenix
By Ronald E. Warnicke
*Counsel for Defendants/Appellants Aperion Communities, LLLP; Eladio
Properties, LLLP; David P. Maniatis; and Mark Faucher*

Reaves Law Group, P.C., Phoenix
By David M. Reaves
*Counsel for Receiver/Appellee David M. Reaves*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Andrew W. Gould and Judge Patricia A. Orozco joined.

---

**S W A N N**, Judge:

¶1        This is an appeal from the entry of summary judgment for lenders in a deficiency action under A.R.S. § 33-814(A), and from certain post-judgment collection orders.  We hold that though the superior court correctly entered summary judgment regarding the fact of the defendants' defaults, and committed no abuse of discretion by denying the defendants' motion for relief from the portion of the judgment related to the fair market value hearing, the lenders were not entitled to summary judgment on their claimed default balances.  Though the lenders' calculation of the default balances included late fees and default interest, the defendants presented evidence sufficient to create a genuine dispute of fact regarding whether the lenders had agreed to waive such penalties.

¶2        Accordingly, we vacate the deficiency judgment and remand for further proceedings regarding the default balances only.  We dismiss the appeal from the post-judgment orders as moot.

**FACTS AND PROCEDURAL HISTORY**

¶3        In early 2007, IMH Secured Loan Fund, LLC ("IMH Secured") made two separate but similar loans.  First, in January 2007, IMH Secured (later succeeded in interest by IMH Special Asset NT 161, LLC ("IMH 161")) loaned $6,580,000 to Eladio Properties, LLLP ("Eladio") and Aperion Communities, LLLP ("Aperion").  In connection with the loan, David P. Maniatis, president of both Aperion and Eladio, executed a promissory note secured by a deed of trust on real property located in Texas.  Maniatis also personally guaranteed payment under the note.  The loan, note, trust property, guaranty, and all related matters are hereinafter referred to by the prefix "Eladio."

¶4        Second, in February 2007, IMH Secured (later succeeded in interest by IMH Special Asset NT 168, LLC ("IMH 168")) loaned $3,450,000 to Aperion.  Maniatis, on Aperion's behalf, again executed a promissory note, secured by a deed of trust on a second parcel of real property located

in Texas. And again, Maniatis personally guaranteed payment under the note. Maniatis and Mark Faucher also guaranteed payment in their capacity as trustees of the DPM-TT Trust. The loan, note, trust property, guaranty, and all related matters are hereinafter referred to by the prefix "Aperion."

¶5 Both the Eladio note and the Aperion note provided for monthly interest-only payments for one year, calculated at the greater of 11.5% per annum or the prime rate plus 3.25%, followed by a final payment of all unpaid principal, interest, and other amounts due. The notes specified that failure to make payments would constitute an event of default, which would not only trigger daily late fees of $1,000 and monthly post-maturity late fees of 0.5% of the outstanding principal, but also permit acceleration of all unpaid principal, interest, and other amounts. The notes further specified that upon occurrence of a default event, all amounts would bear interest at the rate of 24% per annum, compounded monthly.

¶6 It is undisputed that the borrowers defaulted on their obligation to make payments under the notes. The lenders thereafter instituted trustee's sales of the Eladio and Aperion properties, and ultimately purchased them for credit bids in January 2010. The lenders then brought deficiency actions, later consolidated, against the borrowers and guarantors on both loans.

¶7 The lenders moved for summary judgment. In support of the motion, the lenders provided the declaration of Steven T. Darak, the Chief Financial Officer of IMH Financial Corporation, IMH Secured's successor by merger and the sole member of IMH 161 and IMH 168. Darak stated that defaults had occurred and that as of the date of the trustee's sales, at least $9,909,026.06 was outstanding under the Eladio note and at least $5,364,935.21 was outstanding under the Aperion note, with default interest continuing to accrue. Darak did not specify when the defaults occurred or provide the documents he reviewed to calculate the default balances. But he nonetheless used the balances to calculate deficiencies.

¶8 The defendants did not dispute that defaults had occurred, or that the lenders had purchased the Eladio property for a $3,460,000 credit bid and the Aperion property for a $3,200,000 credit bid. They contended, however, that genuine issues of fact existed as to both the lenders' calculation of the default balances and the fair market values of the trust properties.

¶9          In support of their contention that the lenders had miscalculated the default balances, the defendants provided Maniatis's declaration. Maniatis stated that he had many dealings with Shane Albers, whom he believed to be "the manager of IMH," and he

> personally had a conversation with Shane Albers wherein he agreed that if we made the interest payments due on the loans through September 2008, which we did, that IMH wouldn't foreclose on the subject properties and would simply continue to accrue interest at the rates set forth in the Promissory Notes, which agreement is confirmed by the Loan Statements attached hereto that I received from IMH dated 6/30/2009 showing the Principal and Interest due as of that date on both loans. Notably, the principal balances on the statements are different than those stated in the Declaration of Steven T. Darak offered in support of the pending Motion for Summary Judgment, and the interest accrued in the six (6) months after 6/30/2009, even assuming a default rate of 24% per annum could not be anything close to the figures presented by IMH in the Declaration of Steven T. Darak.

The June 2009 loan statements attached to the declaration bore "Loan Statement" titles and an "IMH" logo and return address, and were addressed to Maniatis as guarantor. They stated "Loan Type: Interest Only Paid in Arrears," set forth principal and interest balances consistent with Maniatis's declaration, and calculated "Monthly Interest" consistent with the non-default interest rate as applied to the principal. The statements calculated the "Current Monthly Payment" and "Net Balance Due" by adding the interest balance to the new monthly interest.

¶10          The lenders filed a reply and with it provided additional evidence. In a second declaration, Darak stated that the defendants had defaulted on the loans in October 2008. He also stated that IMH entities routinely send loan statements to borrowers to induce payment, but do not include late fees or default interest on the statements and instead track those charges separately. He provided copies of such tracking documents for the Eladio and Aperion loans. The tracking documents set forth daily late fees, monthly late fees, and compounded default interest.

¶11          Despite Darak's assertions regarding IMH entities' usual practice of omitting the full amounts due from their loan statements, the lenders moved to strike their own loan statements from Maniatis's summary-judgment submissions. They argued that the loan statements

were inadmissible, unauthenticated hearsay. The defendants responded that the statements were "clearly likely admissible hearsay subject to the business records exception."

¶12　　　　The superior court denied the motion to strike but noted that it "only has considered evidence that is relevant and admissible." The court then granted partial summary judgment for the lenders, concluding: "[N]o genuine issue of material fact exists as to liability. Defendants admit that they are in default. However, genuine issues of material fact exist as to damages." Consistent with A.R.S. § 33-814(A), the court set a hearing on the trust properties' fair market values.

¶13　　　　Before the time set for the fair market value hearing, the parties asked the court for clarification regarding whether the default balances had already been established. Disputing the applicability of the statute of frauds, the parties also asked whether the defendants could offer evidence of the oral modification agreement that Maniatis described in his declaration. After holding a telephonic conference, the court answered the first question "Yes" and the second question "No," and denied as moot the lenders' motion in limine to exclude evidence regarding the amounts owed. The court did not elaborate on the rulings in its minute entry. But the parties later agreed in a joint pretrial statement that the court had accepted the default balances identified in Darak's declaration, and had also ruled that daily late fees, monthly late fees, and default-rate interest continued to accrue in accordance with the terms of the notes.

¶14　　　　At the conclusion of the hearing, the court accepted the opinions of the lenders' appraiser: the court ruled that as of the date of the trustee's sales, the fair market value of the Eladio property was $3,000,000 and the fair market value of the Aperion property was $2,800,000. Relying on those values, the credit bids of $3,460,000 for the Eladio property and $3,200,000 for the Aperion property, and the default balances of $9,909,026.06 for the Eladio loan and $5,364,935.21 for the Aperion loan, the court calculated the Eladio deficiency as $6,449,026.06 and the Aperion deficiency as $2,164,935.21. The court held that with respect to both deficiencies, interest accrued from the date of the trustee's sales at the rate of 24%. The court awarded the lenders their attorney's fees and costs, but the lenders waived the opportunity to apply for fees and costs in the interest of obtaining speedy entry of judgment. The court entered a signed, final judgment in December 2012, and the lenders promptly commenced aggressive collection efforts.

**¶15** The defendants timely filed a notice of appeal from the December 2012 judgment, thereby initiating our case number 1 CA-CV 13-0131, but they thereafter obtained a suspension of the appeal to allow the superior court to decide their motion for relief from judgment under Ariz. R. Civ. P. 60(c)(3) and (6). In the Rule 60(c) motion, the defendants contended that the lenders both failed to disclose material evidence before the fair market value hearing and presented misleading testimony at the hearing. The defendants further contended that the hearing's three-hour time limit unduly limited their ability to cross-examine witnesses and present their case.

**¶16** The superior court denied the Rule 60(c) motion, finding no proof of misconduct warranting relief and observing that the defendants had failed to object to minute entries setting the hearing for three hours. This court reinstated 1 CA-CV 13-0131, and the defendants timely filed an amended notice of appeal from the Rule 60(c) ruling.

**¶17** Meanwhile, collection efforts ensued, leading to multiple post-judgment orders and additional appeals, including a timely appeal from orders enforcing a court-approved stipulation for a receivership.

**¶18** We consolidated all of the appeals. We ruled, however, that the notices of appeal related to the Rule 60(c) and stipulated enforcement proceedings did not require consolidation because they were supplements to the original appeal from the judgment in 1 CA-CV 13-0131. We later dismissed some of the consolidated appeals and stayed briefing in the remaining consolidated cases pending our decision in 1 CA-CV 13-0131.

## DISCUSSION

I.   THE SUPERIOR COURT APPROPRIATELY ENTERED SUMMARY JUDGMENT ON THE FACT OF THE DEFAULTS, BUT ERRED BY GRANTING SUMMARY JUDGMENT AS TO THE DEFAULT BALANCES.

**¶19** The defendants contend that the superior court erred by granting summary judgment on the fact of liability and on the lenders' calculation of the default balances. A moving party is entitled to summary judgment "if the moving party shows that there is no genuine dispute as to material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review the grant of summary judgment de novo, taking the evidence and reasonable inferences in the light most favorable to the nonmovant. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003).

**¶20**      The record reveals that the lenders were entitled to summary judgment with respect to the fact of the defendants' defaults. The lenders presented evidence, by way of Darak's first declaration, that defaults occurred on both loans. The defendants unequivocally responded that the defaults were "[u]ndisputed." They cannot now complain that summary judgment on the fact of the defaults was unjustified.

**¶21**      But though we affirm the entry of summary judgment as to the fact of the defaults, we hold that the lenders were not entitled to summary judgment on the default balances.

**¶22**      As an initial matter, we note that the lenders' initial filings did not satisfy their burden of persuasion. Darak's first declaration was insufficient to show that the lenders were entitled to summary judgment on the balances claimed because he did not identify the default dates or provide records to support his calculations. *See Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 213, ¶¶ 16-18 (App. 2012). The lenders did not cure the evidentiary deficiency until they filed Darak's second declaration with their reply.

**¶23**      We observe that only in limited circumstances may evidence be submitted for the first time with a summary-judgment reply. The rules of civil procedure do contemplate that the reply may be accompanied by evidence. *See* Ariz. R. Civ. P. 7.1(a) ("Affidavits submitted in support of any answering memorandum *or memorandum in reply* shall be filed and served together with that memorandum . . . ." (emphasis added)), 56(c)(2) ("The moving party shall have 15 days after service of the response in which to serve a *reply memorandum and any supporting materials*." (emphasis added)); *see also Sitton v. Deutsche Bank Nat'l Trust Co.*, 233 Ariz. 215, 220, ¶ 26 (App. 2013) (finding no abuse of discretion in superior court's consideration of supplementary, nonprejudicial declaration submitted with reply to motion for summary judgment). But that does not mean that the movant may unfairly profit by failing to present material evidence until after the nonmovant may no longer meaningfully respond.[1] *See* Michael D. Moberly

---

[1]      The summary-judgment scheme provides that the movant shall submit a supported statement of facts, the respondent shall then have an opportunity to dispute the movant's facts and offer his or her own facts, and the movant may finally file a reply. Ariz. R. Civ. P. 56(c)(2)-(3). The rules do not authorize surreplies, and the respondent's ability to object to evidence presented for the first time on reply is limited even under Rule 7.1(f), which was enacted after the period relevant to this appeal.

& John M. Fray, *Squandering the Last Word: The Misuse of Reply Affidavits in Summary Judgment Proceedings*, 15 Suffolk J. Trial & App. Advoc. 43, 54-55, 65 (2010) (discussing federal law). And though a court could mitigate the harm posed by such circumstances by authorizing a surreply, such a measure risks significantly expanding the time and resources required to resolve summary-judgment motions. *See id.* at 77–78. We conclude, therefore, that a movant may submit new evidence on reply only if the evidence is supplemental and the respondent is not prejudiced by its inability to answer substantively.

¶24 Here, the lenders' reply evidence was proper. The lenders identified certain default balances in the original statement of facts. The respondents had the opportunity to challenge those balances and did so. Darak's second declaration did not represent a change in the lenders' position regarding the balances — it merely provided the requisite evidentiary support. Accordingly, the court could consider the new evidence, and the lenders' motion could not be denied based on the initial evidentiary deficiency.

¶25 The lenders' reply evidence did not, however, entitle them to summary judgment. The defendants disputed the lenders' claimed default balances, presenting Maniatis's declaration that the lenders had orally waived default interest and late charges and that the waiver was reflected in the June 2009 loan statements. The lenders contend that the defendants' evidence was legally insufficient to preclude summary judgment. We hold otherwise.

¶26 As an initial matter, we reject the lenders' contention that the defendants failed to preserve the "oral waiver" defense because they did not specifically argue it in the body of their response. The response relied on Maniatis's declaration and the loan statements to argue that the lenders had miscalculated the default balances. That evidence was sufficient to place the oral waiver defense at issue.

¶27 We next reject the lenders' contention that the loan statements were inadmissible. The lenders did not deny creating or sending the statements, and indeed affirmatively asserted that they sent those types of statements in the normal course of business.

¶28 The lenders' characterization of the statements as inadmissible hearsay is flawed. The defendants bore no burden of persuasion in the summary-judgment proceedings — their only burden was to demonstrate the existence of a genuine dispute of material fact. *Nat'l*

*Bank of Ariz. v. Thruston*, 218 Ariz. 112, 115, ¶16 (App. 2008) ("The moving party's burden of persuasion on the motion remains with that party; it does not shift to the non-moving party."). "'Hearsay' means a statement that . . . a party offers in evidence to prove the truth of the matter asserted in the statement." Ariz. R. Evid. 801(c). By submitting Maniatis's declaration and documents consistent with the declaration, the defendants did not assume the burden of demonstrating that the documents themselves were "true" — the mere fact that they purported to show a lower balance due than the lenders later claimed was enough to create an issue of fact concerning the waiver defense. In other words, the important point on summary judgment was *what* the lenders had said, not whether it was "true" in an ultimate sense.

¶29        We next address the lenders' contentions that because the defendants' evidence of waiver described an oral agreement, the agreement was unenforceable. The lenders first contend that the statute of frauds, specifically A.R.S. § 44-101(6) and (9), barred oral modification of the loan agreement. But the statute of frauds, by its terms, bars only "action[s]" on certain oral agreements. A.R.S. § 44-101. The defendants' presentation of evidence in response to a summary-judgment motion was not an "action"; it was a defense to an action on a written loan agreement. We construe the statute literally as written, and find in it no bar to a defense based on an oral representation. *See Big A LLC v. Lindworth Inv., LLC*, 458 S.W.3d 340, 343–44 (Mo. Ct. App. 2015) (holding that the statute of frauds does not apply to defenses).

¶30        The lenders finally contend that the promissory notes precluded oral waivers by their terms. But in general, parties to a written contract may orally modify it by mutual assent, supported by consideration, even if the contract prohibits oral changes. *Phx. Orthopaedic Surgeons, Ltd. v. Peairs*, 164 Ariz. 54, 57-58 (App. 1989), *disapproved of on other grounds by Valley Med. Specialists v. Farber*, 194 Ariz. 363 (1999). And despite the lenders' argument to the contrary, the defendants' claimed oral waiver was sufficiently supported by consideration. "Forbearance by a creditor to seize his debtor's property or enforce a lien against it, has often been held to be sufficient consideration to support an oral promise of guaranty when such forbearance enables the promisor to obtain an advantage or benefit." *Yarbro v. Neil McGinnis Equip. Co.*, 101 Ariz. 378, 381–82 (1966) (citing cases). The evidence reasonably supports an inference that both the defendants and the lenders would benefit from an agreement to maintain the status quo — such would allow the defendants to keep the properties and would allow the lenders to avoid the burdens of foreclosure. We also reject the lenders' contention that Maniatis's description of the agreement was so

indefinite as to be objectively unbelievable. To be sure, Maniatis did not identify an end date to the oral interest-only agreement. But because we must draw all reasonable inferences in the defendants' favor, we cannot say that an imperfect description of the waiver of certain penalties in a short-term loan with a balloon payment entitled the lenders to summary judgment.

¶31 Maniatis's declaration and the loan statements were sufficient to raise a genuine dispute of material fact regarding the default balances, and the lenders were not entitled to summary judgment on the balances.[2]

II. THE ERRONEOUS ENTRY OF SUMMARY JUDGMENT ON THE DEFAULT BALANCES RENDERS THE POST-JUDGMENT PORTION OF THIS APPEAL MOOT.

¶32 A known default balance is critical to the calculation of a deficiency judgment: the judgment is calculated as the difference between the default balance and the greater of the trust property's trustee's-sale price or its fair market value as of the sale date. A.R.S. § 33-814(A). Because we hold that the lenders were not entitled to summary judgment on the default balances, we must vacate the deficiency judgment and remand for further proceedings. That means, as a practical matter, that the portion of this appeal related to the stipulation-enforcement orders is moot. We therefore dismiss it.

---

[2] The defendants contend that the lenders' claimed balances were based on unlawful late fees. The defendants rely on *Dobson Bay Club II DD, LLC v. La Sonrisa de Siena, LLC*, 239 Ariz. 132 (App. 2016) (review granted Sept. 20, 2016). The lenders answer that the defendants waived their opportunity to challenge the late fees by failing to raise the issue in their response to the summary-judgment motion. But the lenders did not specify that their calculations included late fees until they filed the reply, and the defendants did object in their response to what they viewed as unknown assessments even assuming application of the default-interest rate. They also generally objected, albeit on "unfair trade practices" grounds, to "the interest, penalties, and other charges assessed by Plaintiffs." On this record, we find that the defendants did not waive their ability to challenge the late fees. But we express no opinion as to the enforceability of the late fees, and the superior court may consider such a challenge on remand.

**¶33** We note, however, that even if the lenders do not prove their claimed deficiency balances upon remand, substantial deficiency balances will still exist even under the defendants' version of the facts. Extrapolating the data from Maniatis's declaration and the June 2009 loan statements (and in view of the defendants' failure to assert that they made payments after those statements were issued), it is undisputed that as of the date of the trustee's sales the defendants owed about $7,500,000 on the Eladio loan and more than $3,900,000 on the Aperion loan. On remand, the lenders' judgment-collection efforts must be considered as they apply to those undisputed amounts.

III.   THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION BY DENYING THE DEFENDANTS' MOTION FOR RULE 60(C) RELIEF RELATED TO THE FAIR MARKET VALUE HEARING.

**¶34** Though we vacate the deficiency judgment based on the dispute of fact concerning the default balances, we nonetheless decide the appeal from the denial of the defendants' Rule 60(c) motion because that motion was based solely on the fair market value hearing. The fair market value determination goes to a distinct component of the deficiency judgment that is unaffected by the default balances. *See* A.R.S. § 33-814.

**¶35** Rule 60(c) provides that "the court may relieve a party . . . from a final judgment . . . for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; . . . or (6) any other reason justifying relief from the operation of the judgment." The defendants moved for relief under Rule 60(c)(3) based on alleged disclosure violations and misleading testimony, and for relief under Rule 60(c)(6) based on the same grounds plus the court's refusal to grant more time for the hearing. We review the court's ruling for an abuse of discretion. *City of Phx. v. Geyler*, 144 Ariz. 323, 328 (1985).

A.   The Superior Court Did Not Abuse Its Discretion by Denying Relief Under Rule 60(C)(6).

**¶36** As an initial matter, we note that to obtain relief under Rule 60(c)(6), "the reason for setting aside [the judgment or order] must *not* be one of the reasons set forth in the five preceding clauses." *Panzino v. City of Phx.*, 196 Ariz. 442, 445, ¶ 6 (2000) (citation omitted). Because relief for misconduct is governed by Rule 60(c)(3), the defendants' prospective Rule 60(c)(6) relief was limited to their contention that the court afforded them insufficient time for the fair market value hearing.

¶37        We hold that the court acted within its discretion by restricting the fair market value hearing to three hours, and we reject the defendants' contention that the limitation deprived them of due process. The court has discretion to impose reasonable time limits on trial proceedings to avoid undue delay, waste of time, or needless presentation of cumulative evidence, so long as the time limits are sufficiently flexible to allow for adjustment during trial and no prejudice results. *Brown v. U.S. Fidelity & Guar. Co.*, 194 Ariz. 85, 90–91, ¶¶ 29–30 (App. 1998). Here, the hearing focused on a single, straightforward issue: the fair market values of two properties. The court acted well within its discretion by determining that the issue could be adequately addressed in three hours, and the parties were given ample notice of the time limitation.[3] Further, the record of the hearing reveals that the parties were given a full and fair opportunity to present their cases. They were kept updated throughout the hearing of the time they had remaining, and they were able to present the testimony of competing appraisers and submit the appraisers' written reports into evidence. The defendants were able to cross-examine the lenders' witnesses, and they were given additional time at the end of the hearing to conduct a re-direct examination of their own witness. The defendants' tactical decision to spend the majority of their time on cross-examination does not establish an abuse of discretion or prejudice. *See Gamboa v. Metzler*, 223 Ariz. 399, 402, ¶ 15 (App. 2010).

> **B.** **The Superior Court Did Not Abuse Its Discretion by Denying Relief Under Rule 60(C)(3) Related to the Lenders' Disclosures.**

¶38        Rule 26.1 imposes a continuing duty to disclose, among other things, documents "known by a party to exist whether or not in the party's possession, custody or control and which that party believes may be relevant to the subject matter of the action, and those which appear reasonably calculated to lead to the discovery of admissible evidence." Ariz. R. Civ. P. 26.1(a)(9), (b)(2). "[A] failure to disclose evidence that may be relevant, regardless of whether the disclosure was required by a specific discovery request or by the general duty of Rule 26.1, can constitute misconduct under Rule 60(c)(3)." *Norwest Bank (Minn.) v. Symington*, 197 Ariz. 181, 186, ¶ 21 (App. 2000). Even an inadvertent failure to disclose

---

[3]        The hearing was initially set for two hours. At the defendants' request, the court later reset the hearing for one day. But then a different division of the court took over the case and reset the hearing for three hours, issuing two minute entries to that effect in the months leading up to the hearing.

evidence as required under Rule 26.1 can be sufficient to warrant a finding of misconduct by clear and convincing evidence. *Id.* at ¶ 22. But "proof of misconduct, standing alone, does not justify relief under Rule 60(c)(3). The movant must also show that the failure to disclose substantially interfered with the ability to fully prepare for trial." *Id.* at ¶ 23. The movant's burden, which must be met by a preponderance of the evidence, "may be shouldered either by establishing the material's likely worth as trial evidence or by elucidating its value as a tool for obtaining meaningful discovery . . . [or by raising a rebuttable presumption of interference by] demonstrat[ing] that the misconduct was knowing or deliberate." *Id.* at 187, ¶ 23 (citation omitted). The movant need not show "that the outcome of the case would have been different but for the nondisclosure." *Id.* at ¶ 26 n.1.

> 1. The Superior Court Did Not Abuse Its Discretion by Determining that the Lenders' Failure To Disclose Their Intent To Develop the Properties Did Not Constitute Misconduct.

**¶39** The defendants contend that the lenders failed to disclose that they intended to develop the properties and believed their development plans increased the properties' values. The defendants contend that in view of the lenders' undisclosed plan to hold the property for development, the "as is" valuation evidence presented at the hearing was misleading and prejudicial. The defendants point specifically to the listing agent's testimony that the Eladio property would be difficult to develop as a stand-alone parcel.

**¶40** The question before the court, however, was the properties' fair market value. For purposes of calculating a deficiency judgment,

> "fair market value" means the most probable price, *as of the date of the execution sale*, in cash, or in terms equivalent to cash, or in other precisely revealed terms, after deduction of prior liens and encumbrances with interest to the date of the sale, for which the real property or interest therein would sell after reasonable exposure in the market under conditions requisite to fair sale, with the buyer and seller each acting prudently, knowledgeably and for self-interest, and assuming that neither is under duress.

A.R.S. § 33-814(A) (emphasis added). A property's potential future uses are of course relevant to its value at the time of the trustee's sale. *Cf. Life*

*Investors Ins. Co. of Am. v. Horizon Resources Bethany, Ltd.*, 182 Ariz. 529, 534 (App. 1995) (recognizing that actual post-sale conduct does not alter fair market value as of the date of the sale). But the future user's *identity* is irrelevant. The lenders' appraiser recognized in his reports that the properties could be put to their "highest and best" uses if developed in response to demand. The appraisers' opinions therefore took into account the value of the properties as potentially developable properties, considering the market and the properties' unique characteristics. The lenders' failure to disclose their personal plans and opinions did not constitute misconduct.

> 2. The Superior Court Did Not Abuse Its Discretion by Determining that the Lenders' Failure To Disclose a Purchase Offer Did Not Substantially Interfere with the Defendants' Ability To Prepare for the Hearing.

**¶41** The lenders successfully argued at the hearing that the properties' listing agent should be allowed to testify about purchase offers received after the date of the trustee's sales. The defendants contend that the lenders failed to disclose one of several offers to purchase the Eladio property. At the hearing, the lenders relied on the following Statement from the Uniform Appraisal Standards: "Data subsequent to the effective date may be considered in developing a retrospective value as a confirmation of trends that would reasonably be considered by a buyer or seller as of that date." The Statement further provides: "The appraiser should determine a logical cut-off because at some point distant from the effective date, the subsequent data will not reflect the relevant market. This is a difficult determination to make."

**¶42** The lenders presented evidence of four offers to purchase the Eladio property after the January 2010 trustee's sale: (1) a February 2011 offer of less than $2,970,000; (2) a March 2011 offer of $3,465,000; (3) a June 2011 offer of $4,125,000; and (4) a June 2012 offer of $4,250,000, which was under negotiation at the time of the hearing and was contingent on the offeror's ability to acquire neighboring properties. The defendants presented evidence of an additional February 2011 offer to purchase the property along with others for the total price of $5,900,000.

**¶43** In September 2012, a month before the fair market value hearing, the listing agent received a sixth offer to purchase the Eladio property for $5,000,000 along with neighboring properties for other amounts. It is undisputed that the lenders did not disclose that offer before

the hearing, and they made no showing that the defendants had independent knowledge of the offer.

**¶44**        The lenders contend that they were not required to disclose the September 2012 offer under Rule 26.1 because it was made long after the trustee's sale, was part of a package offer, and was not a serious offer because it was made by a known associate of Maniatis who failed to provide the listing agent with proof of funds.[4]  But "[a]ll that is required to trigger a duty to disclose . . . is a determination that . . . a document 'may' have relevant content.  And 'relevance' for discovery purposes is quite broad, not limited to evidence that is admissible at trial but including information that may be useful solely because it reasonably may lead to admissible evidence."  *Norwest*, 197 Ariz. at 185, ¶ 15.  Under that standard, the September 2012 offer should have been disclosed.  The very Statement from the Uniform Appraisal Standards on which the lenders relied to achieve admission of the other offers expressly acknowledges that it is difficult to determine where to draw the temporal line regarding the relevance of post-trustee's-sale data, and the lenders themselves presented evidence of a package offer provided just three months before the undisclosed offer.  Though the lenders were free to argue at the hearing that the later offer was not as instructive as the other offers, or that it was not genuine, they were not free to withhold it from the defendants.  Their failure to disclose the offer constituted "misconduct" within the meaning of the rule.

**¶45**        We cannot say, however, that the court abused its discretion by determining that the misconduct did not substantially interfere with the defendants' ability to prepare for the hearing.  To be sure, the standard of proof for interference is low: a preponderance of the evidence. *See Norwest*, 197 Ariz. at 187, ¶ 23.  But the qualitative aspect is higher: the interference must be "substantial."  *See id.* at 186, ¶ 23.

**¶46**        The defendants first attempted to establish substantial interference by arguing that the misconduct was intentional.  In support of that contention, they claimed that the lenders' post-judgment collection efforts were unlawful and unprofessional.  But even assuming the truth of those allegations, we fail to see how they are instructive regarding the pre-hearing disclosure issue.

---

[4]        The lenders also argue for the first time on appeal that there is no evidence their listing agent provided them a copy of the offer.  We discern no reason not to attribute the agent's knowledge to the lenders.

¶47        The defendants next attempted to establish substantial interference by contending that they would have provided the undisclosed offer to their appraiser and would have cross-examined the listing agent about it.  But to show substantial interference, the defendants were required to prove that the offer had "likely" evidentiary worth or could lead to "meaningful discovery."  *See Norwest*, 197 Ariz. at 187, ¶ 23 (citation omitted).  We found that standard satisfied in *Norwest* when the lender in a deficiency case disclosed an appraisal that valued the property at $3,000,000 on the foreclosure date but failed to disclose a second appraisal that valued the property at $6,000,000 a few months later.  *Id.* at 183, 187, ¶¶ 5–6, 26.  We also found it satisfied in *Breitbart-Napp v. Napp* when the husband in a dissolution case failed to disclose his business partner's decision to market certain properties that affected the parties' settlement agreement.  216 Ariz. 74, 76, 82, ¶¶ 2, 27–30 (App. 2007).  In both of those cases, the undisclosed evidence's value to the other party was plainly significant.  Here, though the September 2012 offer held some evidentiary value, we cannot say that the court abused its considerable discretion by determining that the offer was not so central to the parties' dispute that the failure to disclose it deprived the defendants of the opportunity to effectively prepare for the hearing.

      C.        The Superior Court Did Not Abuse Its Discretion by Denying Relief Under Rule 60(C)(3) Related to the Lenders' Testimony.

¶48        We finally address the defendants' contentions that they were entitled to relief under Rule 60(c)(3) based on the lenders' presentation of misleading testimony.

¶49        First, the defendants contend that the lenders' listing agent misleadingly valued the Eladio property as agricultural property.  But the agent did not in fact value the property.  He simply reported the offers he had received, and in describing the June 2012 offer expressed his opinion that the Eladio property would be difficult to develop without the benefit of assemblage.  We perceive no impropriety in his testimony.

¶50        Second, the defendants contend that the lenders "failed to point out" how the properties' location in a Municipal Utility District "increased the value of the property."  That contention is without merit.  The lenders' appraiser specifically described the benefits of a Municipal Utility District and testified that he "did give credit in [his] appraisals for the fact that those approvals were basically in place for the creation of a future MUD."

**¶51**        Third, the defendants contend that the lenders "failed to inform the Trial Court that their witnesses . . . were aware of undisclosed facts" regarding the sales prices of certain adjacent properties. But review of the record shows that the sales data was not undisclosed. The defendants identified the underlying documents in the joint pretrial statement but apparently chose not to use them at the hearing. The lenders were under no obligation to introduce them.

**¶52**        Finally, the defendants contend that the lenders' witnesses misrepresented the availability of residential lots for sale in nearby developments. The defendants first point out that though the lenders' appraiser estimated that it would take approximately four years for the market to absorb the available inventory, the listing agent's marketing materials projected a need for new development in approximately two years. They then point to the post-hearing declaration of a different real estate agent, in which the agent stated that two neighboring developments were completely built-out and one had been completely sold-out by 2011. Nothing in defendants' arguments is indicative of impropriety by the lenders. The defendants were able to draw the court's attention to the conflicting opinions of the appraiser and the listing agent by moving the listing agent's marketing materials into evidence at the hearing, and they provide no explanation of how their late-acquired third opinion is indicative of misconduct by the lenders.

**CONCLUSION**

**¶53**    We hold that though the superior court correctly entered summary judgment for the lenders regarding the fact of the defendants' defaults, and did not abuse its discretion by denying the defendants' motion for Rule 60(c) relief related to the fair market value hearing, the court erred by entering summary judgment on the lenders' claimed deficiency balances. Because the judgment relied on those balances, we vacate it and remand for further proceedings consistent with this decision, and we dismiss the appeal from the post-judgment collection efforts as moot. We defer the parties' competing requests for attorney's fees and costs on appeal to the superior court pending its resolution of the case. *See Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 204, ¶ 37 (App. 2007).



AMY M. WOOD • Clerk of the Court
FILED:  AA